# First National Bank v. Nelson.

*Bill in Equity to set aside the Transfer of a Note and Mortgage, and for the Foreclosure of the Mortgage.*

1 *Staleness of demand; limited application.*—The doctrine of staleness of demand, which unlike the theory of limitations, does not grow out of the mere lapse of time, cannot be invoked as a defense to a suit in equity when the lapse of time is not sufficient to bar the corresponding legal remedy, unless there has been such a change in the condition or relation of the property or parties, resulting from unreasonable delay and long acquiesence unexplained, as to render the enforcement of the claim inequitable.

2. *Pleadings and proof; right to make defense against note or written instrument without denying their execution under oath.*—The statute (Code, §§ 2770, 2771), providing for admission in evidence, without proof of execution, of a written instrument which is the foundation of the suit, or one offered under the plea of set-off, unless execution be denied by pleading under oath, relates solely to the denial of the execution of instruments which are the foundation of the suit or offered under the plea of set-off; and does not prevent a party making any defense to a note or other written instrument, except as to its execution, though he has not denied under oath the execution of such paper.

3. *Husband and wife; transfer of property.*—The statute (Code, § 2349), providing that husband and wife may contract with each other, but that all contracts into which they enter are subject to the rules of law as to contracts between persons standing in confidential relations, refers solely to contracts by which the husband or wife obtains from the other some personal interest or acquires some enforceable obligation or advantage of the other.

4. *Same; right of wife to set aside a note and mortgage by husband; estoppel.*—Where a husband, as the agent of the wife, while in possession of a note and mortgage given to the wife, induces her to indorse them, and afterwards, while so in possession of said note and mortgage, he assigns them by indorsing them himself, and wrongfully appropriates the proceeds from such transaction to his own use, the wife is estopped to deny the validity of the transfer, and such misappropriation by the husband is no ground for annulling said transfer, unless she can show that she was deceived and defrauded by her husband with the knowledge and connivance of the assignee of said note and mortgage.

APPEAL from the Chancery Court of Montgomery.

[First National Bank v. Nelson.]

Heard before the Hon. JERE N. WILLIAMS.

The original bill in this case was filed on March 8th, 1893, by the appellee, Margaret S. Nelson, against William R. Waller, as administrator of the estate of Owen O. Nelson, deceased, the First National Bank of Montgomery, and the Savannah, Americus & Montgomery Railway, and its receivers. The allegations of the bill are substantially as follows : In 1847 the complainant intermarried with O. O. Nelson, who died in May, 1892, and the defendant Waller was appointed his administrator in October, 1892. In 1882 the complainant became seized and possessed of a certain house and lot in Montgomery, Alabama, which, on May 29th, 1890, she and her husband sold and conveyed to the Savannah, Americus & Montgomery Railway Company for $30,000, $10,-000 of which was paid in cash, and for the remainder, $20,000, two notes for $10,000 each were given, payable in one and two years, and secured by a mortgage back on the property. The bill then further avers that the notes and mortgage were delivered to her husband, never came into her actual possession, and that she had never disposed of them, nor authorized any one else to dispose of them ; that shortly after the execution of the notes her husband brought them to her, and requested her to write her name on the back of them, without stating any reason for her doing so, which she did, without hesitation, and then gave them back to him ; that she did not know the effect of writing her name across the back of the note ; that during all of her married life she had trusted and relied upon her husband in all matters of business, doing whatever he suggested ; and by reason of this trust and confidence, she left the notes in his possession, not doubting that he would hold the same for her. The bill further alleges that, after the death of her husband, complainant caused inquiries to be made and learned for the first time that the defendant, the First National Bank of Montgomery had the notes and claimed them because .they had been indorsed to it by her and her husband, and it had accounted to him for them ; that the bank knew the notes were her separate property, and if any consideration passed to her husband for them, it was, with the knowledge of the bank, applied solely to his use and purposes, and not for her use and benefit ; that the bank had never given her, prior to her husband's death,

any notice of its claims or of its dealings with her husband in reference to said notes.

The First National Bank of Montgomery and Waller, as administrator of O. O. Nelson, filed their answers to the bill of complainant on April 7th, 1893, and averred therein that complainant and her husband sold and transferred both the notes and mortgage to the bank ; that the transfer was made not only by the indorsement of the notes by the complainant and her husband, but that they also executed an instrument in writing, attested by witnesses, by which they expressly transferred and sold to the bank the notes and mortgage, and also sold and conveyed to the bank all of their right, title, interest and estate in and to the property described in the mortgage ; that, upon the delivery of the notes and written transfer and conveyance, the bank paid to her the amount it agreed to pay, to-wit, $20,000. The answer further averred that after such transfer and delivery the complainant recognized the bank as the owner of the notes, and never questioned its right to the same until the commencement of this suit; that at the maturity of the first of said notes, the railway company applied to the bank for an extension, but the bank refused to grant it unless the complainant would consent thereto, and that thereupon she and her husband executed another instrument in writing, reciting that they had sold and transferred the notes to the bank, and consenting that it might grant the extension asked for.

Subsequent to the filing of these answers, the complainant, in January, 1894, amended her bill, and averred in said amendment that the bank claimed that she and her husband had executed these written instruments ; and while not denying that she did, she averred that she had no distinct recollection of having done so. The amendment further averred that if she did sign the said written instruments, she did so at the request and under the influence of her husband, and in his presence, without any knowledge of the character and purpose of the instruments, without having the same read or explained to her, and without having independent advice, or the opportunity of such advice, with reference to such papers. She denies that there was any discount of the notes with her knowledge or consent, and avers that, if there was any discount of the notes, it was not for her benefit, or with her knowledge and consent.

The prayer of the bill, as amended, is that all writings made by complainant to the bank be declared null and void and cancelled, that the bank be required to pay to her all the money it may have collected on the notes, and that the mortgage be foreclosed to enforce the payment of the balance due on the said notes.

To this bill, as amended, the First National Bank of Montgomery and Waller, as administrator, separately demurred, the grounds of which demurrers were substantially as follows : (1.) The bill should have averred facts showing the title of complainant, and not the conclusion of the pleader that she was seized of an estate in fee in and to the lands. (2.) It was shown that complainant could read and write, and she was, therefore, bound to know that she had executed the transfer and assignment of the notes in question; and that she had waited nearly three years, and until after the death of her husband, before seeking to set aside said transfer and assignment, and was, therefore, barred by laches. (3.) The bill as amended was a departure from the original bill in this, that in the original bill the complainant averred that she had never made any transfer of said notes and mortgage, while in the amended bill she averred she had, and sought to have such transfer set aside. (4.) There was no allegation in the bill showing that the bank was a party to any fraud practiced by her husband on the complainant, or had any knowledge or notice of any fraud used by him in procuring her signature to the transfer and other papers. (5.) The bill did not deny that she executed the transfer and other instruments. (6.) The bill contained no averment of any facts or circumstances from which the law would draw the conclusion that the bank fraudulently influenced her to sign the transfer and acknowledgment. (7.) The bill as amended sought to impeach the execution of the written instrument set up by defendants as a defense to the suit, and was not verified by affidavit. The respondents also moved to dismiss the bill for the want of equity.

Upon the submission of the cause on the demurrers and the motion to dismiss, the chancellor overruled both the demurrers and the motion. The respondents appeal from this interlocutory decree, and assign the same as error.

[First National Bank v. Nelson.]

TOMPKINS & TROY, for appellants.—1. The bill in this case is filed for relief upon the theory that the estate of the complainant in the realty sold by her to the Railway Company was an estate embraced in the "Married Woman's Act" of 1887. Complainant bases her right to recover upon the provisions of section 2349 of the Code of 1886 declaring that all contracts between husband and wife shall be subject to rules of law governing contracts between persons standing in a confidential relation. The title by which she held her property is, therefore, material: she must show that she held it by a title which created in her such an estate as is protected by the statute. Conclusions of law are not good in pleading. The complainant should have stated the facts as to how she acquired title, and these facts should be set out with sufficient certainty to enable the court to say that she has such a title as brings her within the protection of the statute. She does not even aver that it was her separate estate.—*Blackwell v. Gurley*, 26 Ala. 405; *Duckworth v. Duckworth*, 35 Ala. 70; *Goldsby v. Goldsby*, 67 Ala. 560; *Rapier v. Gulf City &c. Co.*, 64 Ala. 340; *McKineley v. Irvine*, 13 Ala. 693; *Seals v. Robinson*, 75 Ala. 368; *Gibson v. Trowbridge &c. Co.*, 93 Ala. 579, 582.

2. Sections 2770 and 2771 are held to apply to proceedings in equity as well as to suits at law.—*Bonner v. Young*, 68 Ala. 35; *Roper v. Strahan*, 71 Ala. 75; *Holmes v. The Bank*, 12 Ala. 412. They require that all denials of the execution of a written instrument, either the foundation of a suit, or of a defense to a suit, shall be verified by affidavit. This is the rule whether that denial is an express denial that the party denying its execution ever signed the instrument at all, or whether the denial is based upon the fact that although the party did sign it, yet he did it under such circumstances as makes it void as against him, such as fraud, duress, &c.—*Lazarus v. Shearer*, 2 Ala. 718; *Tindal v. Bright*, Minor, 103; *Marin v. Dortch*, 1 Stew. 479.

3. The amendment to the bill is in the nature of a special replication to avoid the defense that complainant had signed a written transfer of the notes in question by setting up that although she did sign this paper it was not her act in law because her signature was obtained through the fraud of her husband.—*Lanier v. Hill*, 30 Ala. 111. It is well settled that any pleading

which seeks to deny, that any written instrument, which is either the foundation of a suit or of a defense to a suit, is the legal act of the party who is alleged to have executed it, must be verified by affidavit, and that the failure to verify it is a defect that can be taken advantage of by demurrer.—*McWhorter v. Lewis*, 4 Ala. 198 ; *Bryan v. Wilson*, 27 Ala. 208; *M. & M. Ry. Co. v. Gilmer*, 85 Ala. 434.

4. There is not an allegation in this bill from which a legitimate inference can be drawn, that, in anything he did, Nelson, was acting as the agent of the bank. It does not appear that it received any benefit whatever from the transaction. All that it did was to discount or purchase the notes, not only properly indorsed by him and her, but transferred by a separate instrument solemnly executed in the presence of and attested by two witnesses. She certainly had a right to discount or sell the notes ; the statute confers upon her the same right to contract that is given to a *feme sole*, only requiring her husband's consent. According to the allegations of the bill, that consent was not only given by his uniting with her in the indorsement of the notes, but also by his uniting with her in a separate instrument transferring them and the mortgage. She also had the right to constitute her husband her agent for making the sale and receiving the money.—*Steiner v. Tranum*, 98 Ala. 315.

5. Under the statutes now existing the wife, with the consent of the husband can make any contract that she could make if a *feme sole*, or any contract that a wife can make in the disposition of her equitable separate estate, even to directing or permitting it to be applied to the payment of his debts.—*Moses v. Dade*, 58 Ala. 211 ; *Holt v. Agnew*, 67 Ala. 360 ; *Hubbard, Price & Co. v. Sayre*, 105 Ala. 440. The case does not come within either of the two classes which the rule as to the contracts between persons occupying confidential relations applies.— 2 Pomeroy's Equity, § 957. The bill is entirely without equity and the motion to dismiss for want of equity should have been sustained.

LESTER A. SMITH and WILLIAM A. GUNTER, *contra.*— 1. The bill was filed on the theory that the complainant, who was a married woman at the time of the transactions complained of, was entitled in equity, to recover

of the bank the property which had been obtained by the bank through her husband by an abuse of her trust and confidence in him, and his undue influence over her of which the bank had notice.—*Waddell v. Lanier*, 62 Ala. 347; 2 *Pomeroy Eq. Jur.*, §§ 955, 956, 957.

2.   The courts take judicial notice of facts which are matters of common knowledge, so common that all persons must be presumed to be cognizant of them, and of all things which ought to be generally known within their jurisdiction.—1 Greenleaf Ev., § 6; 1 Brickell Dig. 804, § 1; 3 Brickell Dig. 707, §§ 11, 13, 18.

3.   The circumstances of this case indicate clearly a participation by the First National Bank in procuring the signature of complainant, and the subsequent conversion of the proceeds.   There must have been some inducement other than the mere investment of its money which moved the bank to make the loan.   When a transaction of so unusual a character as this is shown to result in depriving an unsuspecting and trusting wife, as complainant is shown to have been, of two-thirds of the price of her home, within less than thirty days of the sale, it would be manifest injustice if a court of equity should refuse to lend its aid to the victim, and inquire into the transaction.—*Waddell v. Lanier*, 62 Ala. 347, 351; *Boney v. Hollinsworth*, 23 Ala. 690, 698.

4.   There can be no question from the allegations of the bill, as amended, that the husband obtained from the wife, by undue influence, an instrument in writing that enabled him to dispose absolutely of her property thus acquiring an advantage that was personal to himself, viz., the power, not *the right*, to use the money for himself.   And the bank knowing his fiduciary relation, by the transaction in which it got the benefit of his undue influence, stands in the same relation to complainant as her husband did.   This is the doctrine declared in *Noble v. Moses*, 81 Ala. 530, 537.

5.   We submit that the mere possession of the indorsed papers, acquired under the circumstance shown in the bill, did not constitute him the agent of the wife for their disposition.   And if the bank dealt with him as agent it was bound to know the extent of his authority. 3 Brickell Dig. 22, § 54.   If the transaction in the bill amounted to an appointment of the husband as agent, then it was a contract between husband and wife; as

agency can only be created by contract.—Ewells Evans Agency, p. 22. The husband's undue influence in obtaining the agency, under the circumstances disclosed in the bill, tainted the power. And the bank, dealing with the fiduciary, assumed the burden of showing that it had been fairly obtained.—2 Pomeroy Eq. Jur., §§ 956-957.

HARALSON, J.—1. The doctrine of staleness of demand relied on as a defense in this case, cannot, under the facts shown in the bill, be sustained. *Laches*, as has been well said, does not, like limitation, grow out of the mere passage of time, but it is founded upon the inequity of permitting the claim to be enforced—an inequity, founded upon some change in the condition or relation of the property or the parties.—*Galliher v. Cadwell*, 145 U. S. 368. Whenever such manifest inequity does not appear, "a case does not fall within the operation of the rule, if the suit is for the recovery of property, real or personal, unless it is apparent on the face of the bill, that for the period prescribed as a bar to the corresponding legal remedies, there has been a possession hostile to the title the complainants asserts."—*Shorter v. Smith*, 56 Ala. 208; *Scruggs v. Decatur M. & L. Co.*, 86 Ala. 173.

2. The defendant relies on a written transfer to it by complainant of the notes and mortgage, the suit is instituted to enforce. It is contended, that complainant cannot make defense against such a transfer of these papers to defendant, without denying their execution under oath. The statutes on this subject (Code, §§ 2770-2771) are rules of evidence, and relate to a denial of the execution of the paper, the foundation of the suit,—in the one, or of an instrument offered in evidence under the plea of set-off, in the other,—to debar their admission in evidence without proof of execution; but they have never been construed to mean, that when execution of the paper offered is not denied, or if so, when proved, and read in evidence, the party against whom offered, may not make any possible defense against it, except that he signed it. Besides, the written transfer of the notes and mortgage, is not the foundation of the suit, but an instrument of defense, collateral to the instruments on which the suit is based.

3. The bill shows on its face that complainant is not a very young person. She speaks of her long married life with her lately deceased husband. It is shown, that she was a person who could read and write, and it is not shown that she was suffering from any mental incapacity, rendering her more liable to imposition than married women ordinarily are. She avers in section 5 of her bill, that said notes and mortgage, after their execution, were delivered into the possession of her husband, and never came into her actual possession. The property sold was hers, and the notes were payable to her, and the mortgage given by the purchaser to secure them was made to her. The possession by the husband of these papers, was that of an agent of the wife, and not because they belonged to him, or that he asserted any right or title to them, so far as appears. She states. that she never made any sale, transfer or assignment or other disposition thereof, nor has she ever authorized the sale, transfer or other disposition thereof, nor authorized the collection of said notes or any part thereof. But this denial receives immediate qualification in the succeeding section, six, of the bill, wherein she states, that a short time after the execution of said mortgage and the making of said notes—the possession of them being still in the possession of her husband and agent—he presented the said notes to her, to write her name on the back thereof, and she so wrote her name, without reluctance or hesitation, her husband taking possession of the notes and mortgage thus indorsed. On the effect of these indorsements complainant avers, she was without knowledge or information; that during their long married life, she had trusted and relied upon him in all matters of business, never inquiring into them,—doing what he desired or wished, and in this trust and confidence she left the notes in the possession of her said husband, not doubting he would hold them for her. This indorsement of these papers means something. It was not a mere meaningless performance, in the eye of the law, which meant nothing at all. It meant everything that could fairly come out of such an indorsement. There was in it, under the facts averred, no element of a contract between the husband and the wife. He stipulated for no advantage to himself in getting her to indorse, and she did so freely and voluntarily, without re-

quiring anything from him. The whole transaction finds reasonable solution upon the one idea, made prominent by the complainant herself, that as her agent her husband held and kept the notes; that he had been in the habit of attending to all her business, all their lives; and she did what he suggested with unquestioning confidence, as being best for her. He was her agent, and as such, she empowered him by the indorsement to do as he deemed best.

4. But, to avoid the effect of this indorsement by her of said papers, complainant, in the seventh section of her bill alleges, that since the death of her husband,—which occurred on the 21st of May, 1892, said notes and mortgage bearing date the 29th May, 1890,—she caused inquiries to be instituted for said notes and mortgage, and learned for the first time, that the defendant, the First National Bank of Montgomery, had and claimed to own them, and that they had been indorsed to said bank by her and her husband, and that said bank had accounted to her husband for the notes. She avers, that the bank knew that said notes were her separate estate and property; knew the consideration of them; that their payment was secured by said mortgage; that the consideration paid by the bank to her husband had been applied to his own uses and purposes, and that the bank had given her no information or notice of its claim to said notes, or its dealings with her husband.

The appellant,—the First National Bank,—answered the bill and alleged in substance, that complainant had executed a writen transfer of the notes and mortgage to it, with the written consent of her husband, executed in the presence of and attested by two witnesses; that on the delivery of the notes, mortgage and transfer, it paid complainant the sum of $20,000, the price agreed on; that at the time the first of the notes matured, on May 30, 1891, complainant and her husband, by an indorsement in writing signed by them, consented that the bank might grant an extension of time on the note to the maker—which was sought—without waiver of liability on their indorsement of said note. Confessedly, for the purpose of meeting the facts averred in the answer, the complainant amended her bill by stating, that if such instruments existed, "and she signed the same, of which she has no distinct remembrance or recollection,

she signed the same at the instance and request, and under the influence of her husband, and in his presence, without being informed of its character or purposes, and without the same being read or explained to her, and without her having independent advice, or the opportunity of such advice in reference thereto."

The facts set up in the answer, except as brought out in the original and amended bill, we are not permitted, of course, to consider, in passing on the demurrer. The amendment was made to the bill, as admitted by counsel, "to meet the facts averred in answer." The effort in the amendment is in the nature of a confession and avoidance. The complainant, not denying the allegations she would meet, states that she has no *distinct* recollection of having sold and transferred said notes and mortgage to the First National Bank of Montgomery, but if she did so, it was under the influence of her husband, without the opportunity of independent advice. She seeks to bring the transaction under section 2349 of the Code, providing that "The husband and wife may contract with each other, but all contracts into which they enter are subject to the rules of law as to contracts by and between persons standing in confidential relations," &c. But, as we have seen, this was no contract between husband and wife. The contracts referred to in said section are such as the husband takes an interest in, personal to himself, as where he is a grantee or obligee under the contract, and where the wife is supposed to acquire from him some enforceable obligation or advantage. We hold, therefore, that when complainant indorsed these notes and placed them in the hands of her husband, under the circumstances stated by her, she armed him with the authority by indorsing them himself, to sell and transfer them to the bank, and pass the legal title thereto to it, and she is estopped to deny the validity of the transfer, unless she can show that she was deceived and defrauded by her husband, with the knowledge and connivance of the bank.—Code, § 2348. So far as the allegations of the bill go, there is nothing to show that Mr. Nelson acted as the agent, or in the interest of the bank in the transaction, or that the bank ever had a cent of interest in the money it paid him for the notes. If Nelson, as agent of his wife, disposed of the notes and appropriated the money to his own uses,

35

in the absence of fraud participated in by the bank, who is to blame, Mrs. Nelson who armed him with the capacity to make sale of the notes, or the bank who bought and paid its money for them? It cannot be the law, that if a married woman—as she may legally do—gives her husband the authority, as her agent, to dispose of her property and he does so, and misappropriates the money received therefrom, that such a misappropriation will be ground for annulling the sale, and recovering the property.—*Hubbard v. Sayre*, 105 Ala. 440. Under the allegations of this bill, fraud is not directly imputed to the husband, unless it be implied in the allegation that he collected the money and used it for his own purposes, and this she put him in position to do, by indorsing and entrusting him with the notes, as she had done with all her business.

5. This case is not in conflict with *Lockwood v. Tate*, 96 Ala. 354. There, when the wife indorsed the note and mortgage, it was with an agreement with her husband, that they were not to be used in paying the debt of the husband to Lockwood, of which understanding Lockwood was informed. With such information, the court held, that he was not warranted in imposing unquestioning reliance upon the husband's possession of the note with his wife's indorsement upon it, as evidence of her consent to such a disposition of it as was then made.

The demurrer reached the vices in the bill, and should have been sustained.

Reversed and remanded.