STATE v. GEORGE W. MURPHY.[1]

October 23, 1900.

Nos. 12,308—(27).

**Taxes—Amount Refunded on Invalid Tax Title—Failure to Test Tax Title.**

The holder of a tax title, which more than fifteen years after it had accrued had been adjudged invalid at the suit of the owner of the land, duly applied to and received from the proper county auditor the amount he had paid for such title and subsequent taxes. The amount so paid was included in the taxes for the current year, pursuant to G. S. 1894, § 1610. *Held*, in proceedings to enforce such taxes, that such refundment was legal, and that the owner of the land cannot defeat the collection of the taxes on the ground that the holder of the tax title did not himself bring an action within fifteen years to test his title.

**State v. Norton.**

State v. Norton, 59 Minn. 424, doubted.

In proceedings in the district court for Clay county to enforce delinquent taxes on real estate George W. Murphy interposed an answer. The case was tried before Baxter, J., who ordered judgment against the land for the amount appearing in the published list of delinquent taxes, and on application of defendant certified

[1] Reported in 83 N. W. 991.

to the supreme court for its determination the question stated in the opinion. Affirmed.

*C. A. Nye*, County Attorney for Clay County, for plaintiff.

*M. O. Little*, for defendant.

BROWN, J.

Proceedings to enforce the payment of delinquent taxes, certified from the district court of Clay county. The facts are not in dispute. Briefly, they are as follows:

In proceedings to enforce the payment of taxes delinquent in said county for the year 1879 and prior years, a tax judgment was rendered and entered in the district court of said county against the land in question for the sum of $150. At the tax sale under such judgment, held on September 10, 1881, said land was sold to one Howard, and the usual tax certificate issued and delivered to him. No redemption was ever made from such sale, and Howard conveyed his interest in the land, on August 13, 1883, by quitclaim deed, to one Brendemuehl, who subsequently paid the taxes assessed and levied against it until the year 1891. It does not appear whether Howard or Brendemuehl took possession of the land, whether the owner remained in possession or whether the land was vacant and unoccupied. In May, 1897, the owner of the land brought an action against Brendemuehl to determine the title thereto, in which Brendemuehl pleaded his tax title in defense, and which was tried, and resulted in a judgment declaring the tax title invalid for irregularities and defects in the tax proceedings. Thereafter, on the application of said Brendemuehl, the auditor of said county, by proper warrant on the treasurer, refunded to him the amount paid by said Howard for such tax title, together with all subsequent taxes paid by Brendemuehl, and this proceeding is to enforce against the land the amount so refunded, as provided by G. S. 1894, § 1610.

The landowner interposed as a defense that Brendemuehl was not entitled to a refundment, because he had failed to bring suit to have the validity of his tax title determined within fifteen years from the date of the expiration of redemption; that his right to such refundment was barred by his laches; that the county was not

legally bound to refund the money; and that the fact that the county auditor voluntarily did so could not bind the owner of the land or extend the tax lien. The following question is certified to this court for determination:

"Had the lien for the taxes or right to enforce the same against the land become barred by laches or statute of limitations on account of delay in testing or determining the validity of the tax sale of 1881, or in the refunding of the amount by the county?"

G. S. 1894, § 1610, provides that

"When any tax sale is declared void by judgment of court, * * * the money paid by the purchaser at the sale, or by the assignee of the state on taking the assignment certificate, and all subsequent taxes, penalties and costs that may have been paid thereon, shall, with interest, * * * be returned to the purchaser or assignee, or the party holding his right, out of the county treasury, on the order of the county auditor. Such proceedings shall not operate as a payment or cancellation of any tax included in the judgment or refundment, but the same shall stand as originally extended against the property, and, with all accruing penalties, interest, and costs, be included with the taxes thereon for the current year in the next delinquent tax sale."

The contention on the part of defendant, the landowner, is that, to be entitled to a refundment under this statute, the holder of the tax title must bring an action, and have the validity of his title determined, within fifteen years from the expiration of the period of redemption, the failure to do which constitutes such laches as to deprive him of the right to a return of the money; that the refundment in this case by the voluntary act of the county auditor was wholly unauthorized, not binding on defendant, and ineffectual to restore the lien of the taxes.

There is no statutory authority to sustain this contention. It can only be sustained on the theory adopted by this court in State v. Norton, 59 Minn. 424, 61 N. W. 458. Nowhere in the statute do we find a suggestion that the holder of a tax title must bring an action to determine the validity of his title as a condition precedent to his right of refundment when his title is adjudged invalid. The tax certificate conveys to him the fee to the land covered thereby, and by statute (G. S. 1894, § 1593) such certificate is placed on the

same footing as other deeds of real estate, and is prima facie evidence that all the requirements of the law with respect to the tax sale have been complied with. So long as his title remains unquestioned by the former owner or other person claiming an interest therein, he is the absolute owner of the land, and no judgment confirming his title is at all necessary. Thus, surrounded with statutory declarations and presumptions of validity, no sound reason occurs to us why the courts should step in and say that the holder of such a title must take it with a suspicion of invalidity, and proceed without delay, and obtain a judicial determination of the soundness of such suspicion.

But whether, as between the holder of such a title and the county, the equitable doctrine of laches may be applied to defeat the right of refundment given by statute we need not determine. Such is not this case. We have here no controversy between the county and the holder of the tax certificate. The county has refunded the money to him, and seeks by this proceeding to enforce the amount refunded against the land, as provided by the statute above quoted. It was the duty of the defendant, as owner of the land, to pay these taxes. It is no concern of his that the auditor refunded the amount to the holder of the tax certificate. He was in no way injuriously affected thereby, and cannot be heard to question the regularity of the proceedings resulting in such return. State v. Dressel, 38 Minn. 90, 35 N. W. 580. The statute (section 1610) expressly provides that the refundment proceedings—the payment of the taxes by the holder of the tax certificate, and the repayment thereof upon such title being adjudged invalid—"shall not operate as a payment or cancellation of any tax included in the judgment or refundment." This provision is plain and explicit, and no action or failure of action on the part of the holder of the tax title could operate to nullify or abrogate it.

And whether, in any case, as between the tax-title holder and the county, the former would be estopped by his laches from demanding a refundment of taxes paid by him, the owner of the land, whose duty it is to pay the same, cannot invoke such estoppel in his own favor in proceedings to enforce the taxes after refundment. The refundment of the taxes leaves him in precisely the same position he

was in before the tax title was obtained. He may step up and perform his duty towards the public by paying his taxes into the treasury. The authorities are uniform that one who has not been injuriously affected by the delay of another cannot invoke in his defense the equitable doctrine of laches. First v. Nelson, 106 Ala. 535, 18 South. 154; Daggers v. Van Dyck, 37 N. J. Eq. 130; Platt v. Platt, 58 N. Y. 646; Cranmer v. McSwords, 24 W. Va. 594.

If the case of State v. Norton, supra, can be construed as authority for defendant's contention in this case, it cannot be followed. The soundness of the rule there laid down may well be doubted, and we decline to extend it to cover a case of this kind.

We answer the question certified to us in the negative, affirm the order of the court below, and remand the cause for further proceedings.