CHARLES E. OTIS v. CITY OF ST. PAUL.[1]

December 30, 1904.[2]

Nos. 14,075—(171).

**Refunding Money Paid.**

The right to a refundment of money paid by a purchaser at a sale under a judgment in special assessment proceedings conducted under the charter of the city of St. Paul is not contingent upon an action being brought to test the validity of such proceedings within three years from the date of the sale.

**Same—Invalid Certificate of Sale.**

If the certificate of sale and prior proceedings be adjudged invalid in any form of action, whether commenced before or after the limitation prescribed by the charter for bringing an action to test the validity of the same, the right of refundment exists.

**Case Followed.**

Willius v. City of St. Paul, 82 Minn. 273, to the effect that, in the absence of fraud or collusion, the city, though not a party thereto, is bound by a judgment declaring such proceedings invalid, followed.

Appeal by defendant from an order of the district court for Ramsey county, Bunn, J., overruling a demurrer to the complaint. Affirmed.

[1] NATIONAL BOND & SECURITY COMPANY v. CITY OF ST. PAUL.

December 30, 1904.

Nos. 14,076—(172).

Appeal by defendant from an order of the district court for Ramsey county, Bunn, J., overruling a demurrer to the complaint. Affirmed.

J. C. Michael and G. R. O'Reilly, for appellant.

William G. White, for respondent.

PER CURIAM.

The question in this case is identical with the one determined in Otis v. City of St. Paul. We therefore hold, following the case cited, that the order appealed from in this case must be affirmed.

Order affirmed.

[2] Reported in 101 N. W. 1066, 1134.

*J. C. Michael* and *G. R. O'Reilly,* for appellant.
*Ambrose Tighe,* for respondent.

BROWN, J.

This action was brought to compel defendant to refund the amount paid the city for certain certificates of sale issued by it in proceedings for the enforcement of special assessments against property benefited by local improvements. Judgment for the amount of the special assessments was rendered in those proceedings, upon and pursuant to which a sale of the property benefited was had, and the proper certificates of sale issued; nineteen of which, covering the same property, came into the hands of plaintiff, as receiver of the Savings Bank of St. Paul. After the expiration of the period of redemption—five years from the date of the sale—plaintiff brought an action against the persons who owned the property when the assessment was made, claiming to be the owner thereof; in which, after trial in the district court of Ramsey county, the certificates so held by him were adjudged invalid for irregularities and defects in the proceedings leading up to and including the sale; whereupon plaintiff demanded, under the provisions of section 48, tit. 3, c. 6, of the city charter, that the city refund to him the amount paid for such certificates, with interest, which was refused. To the complaint, containing nineteen causes of action, and which sets out the facts fully, defendant interposed a general demurrer, which the trial court overruled, and the city appealed.

1. The principal question presented for our consideration is whether plaintiff's right of refundment is barred by the limitation contained in the provisions of the charter above referred to. The charter, so far as here pertinent, provides as follows:

> All deeds made to purchasers of lots and parcels of land sold for assessments, or the record thereof, shall in all cases be prima facie evidence that all requirements of the law, with respect to the sale, have been duly complied with, and of title in the grantee therein, after the time for the redemption has expired, and no sale shall be set aside or held invalid unless the party objecting to the same shall either prove that the court rendering the judgment, pursuant to which the sale was made, had not jurisdiction to render the judgment, or that after the judg-

ment and before the sale such judgment had been satisfied, or that notice of sale as required by this act was not given, or that the piece or parcel of land was not offered at sale to the bidder who would pay the amount for which the piece or parcel was to be sold, nor unless the action in which the validity of the sale shall be called in question, be brought, or the defense alleging its invalidity be interposed within three years after the date of the sale, and if any sale shall be set aside by reason of any defect in the proceedings subsequent to the entry of the judgment, the court so setting aside the sale shall have power in such case to order a new sale to be made as nearly as may be in accordance with the provisions of this act. That in any action heretofore or hereafter commenced in which the validity of a deed or certificate of sale issued under this charter is brought into question, and the same shall be set aside on account of any irregularity or defect invalidating the sale pursuant to which said certificate or deed was issued, the party holding such deed or certificate of sale shall recover from the city of Saint Paul the amount paid by the purchaser at the sale, or by the assignee of the city on taking an assignment certificate, with interest at the rate of seven (7) per cent. per annum from the date of such payment. Such amount shall be paid out of the city treasury upon the order of the common council of said city. Such proceedings shall not operate as a payment or cancellation of any assessment included in the judgment, but the same shall stand as originally assessed against the property, and with all accruing interest, penalties and costs. All deeds referred to in this chapter shall be admitted to record without payment of taxes, and without the county auditor's certificate that the changes have been made.

The contention of the city is that, because the judgment and sale in the assessment proceedings, under which plaintiff's certificates were issued, were not adjudged invalid in some action involving their validity, brought within the time limited by the city charter above quoted —three years from the date of the sale—no right of refundment exists. This question was determined adversely to defendant's contention in the

case of Fleming v. Roverud, 30 Minn. 273, 15 N. W. 119, in the case of State v. Murphy, 81 Minn. 254, 83 N. W. 991, and again in Willius v. City of St. Paul, 82 Minn. 273, 84 N. W. 1009.

In the first case cited the question as to the right of refundment arose under section 154, c. 11, G. S. 1866. That statute limited, as does the charter of the city of St. Paul, the time within which an action might be brought to determine the validity of a tax sale to three years from the date of the sale; but the following section provided further, as does the charter of St. Paul, that when the sale of any land was declared void by a court of competent jurisdiction, the amount paid by the purchaser at the tax sale should be refunded to him, with interest. The contention in that case, as it is here, was that the right of refundment depends upon the sale being declared invalid within the period fixed by the statute for bringing an action to test the validity of the same. But the court held otherwise, saying that it would do violence to the language of the statute to hold that the provision for refundment depended upon the result of an action to be commenced thereunder, and within the time thereby prescribed. The right to refundment was held to exist when a tax sale was set aside in any form of action, whether brought within the period fixed by the statute or subsequently. The action in which the validity of the tax proceedings in that case was involved was in fact brought long after the expiration of the time limited by the refundment statute. It was suggested in the opinion in that case that the limitation prescribed by the statute was intended to apply only to the owner of the land, or persons claiming under or through him.

In the case of State v. Murphy, supra, it appeared that in proceedings to enforce the payment of taxes delinquent for the year 1879 and prior years a tax judgment was rendered, and a sale of the land had thereunder in September, 1881. In May, 1897—more than fifteen years after the date of the sale—the owner of the land, in whose name it was assessed, brought an action to determine adverse claims thereto, in which the purchaser at the tax sale pleaded his tax title in defense. The action resulted in a judgment adjudging the tax proceedings invalid, whereupon, upon request of the holder of the tax title, the auditor refunded to him, under the provisions of the General Statutes, the amount paid at the sale, with interest, and immediately, by

authority of the refundment statute, extended the amount thereof upon the records of his office as a tax against the land. In proceedings to enforce that tax the landowner interposed the defense that the refundment was unauthorized; that, as the tax proceedings were not adjudged invalid within fifteen years from the date of the sale—the time fixed by section 5134, G. S. 1894, for bringing actions for the recovery of real property—the right of refundment was barred. The limitation fixed by the refundment statute was not involved in that case, but the principle there applied is applicable to the case at bar. The court there said: "Nowhere in the statute do we find a suggestion that the holder of a tax title must bring an action to determine the validity of his title as a condition precedent to his right of refundment when his title is adjudged invalid. The tax certificate conveys to him the fee to the land covered thereby, and by statute (G. S. 1894, § 1593) such certificate is placed on the same footing as other deeds of real estate, and is prima facie evidence that all the requirements of the law with respect to the tax sale have been complied with. So long as his title remains unquestioned by the former owner, or other person claiming an interest therein, he is the absolute owner of the land, and no judgment confirming his title is at all necessary." The provisions of the charter of St. Paul are to the same effect. All deeds made to purchasers of land sold for special assessments are made prima facie evidence that all the requirements of the charter with respect to the sale have been duly complied with; and in other respects the charter provisions are substantially like those of the General Statutes on the same subject.

The provisions of the charter and of the General Statutes on this subject were incorporated therein for the benefit of those who purchase property at tax sales, and to secure them against loss of the money invested; a right of refundment being an assurance that, if they in fact receive no valid title from the city or state, as the case might be, by the purchase at the tax sale, they should, upon that fact being judicially determined by a competent court, receive a return of their money. In the case at bar, under the provisions of the charter governing sales of this kind, the owner of the property is given five years from the date of the sale to redeem therefrom, and it would be absurd to hold that the limitation of three years within

which an action may be brought to test the validity of the sale should apply to the purchaser's right of refundment.   He could not, with the mere certificate of purchase as the foundation of his action, which might be defeated at any moment by redemption, maintain an action to determine the validity of his title.   He would have no title, and no standing in court in that sort of action, until his rights fully accrued; and even then, as suggested in the case of State v. Murphy, supra, there is no sound reason why he should be required to bring an action to determine the validity of a title which the law presumes valid in every respect.

In view of the purposes of the law and the previous decisions of the court, we find no difficulty in holding that in no proper light can the charter provisions be construed as making the right of refundment conditional upon the tax proceedings being adjudged invalid within three years, or in the particular form of action there authorized to be brought. That right must, to effectuate the purpose of the framers of the charter, viz., to reimburse persons who have advanced money to the city by the purchase of tax certificates, be held dependent only upon the sale being declared invalid in some form of action.

The case of Henningsen v. City of Stillwater, 81 Minn. 215, 83 N. W. 983, is not in point.   The question as to the right of refundment was in no manner involved in that case.   That was an action brought by the owner of land assessed for local improvements against the city to set aside the assessment proceedings on the ground that they were invalid, and was treated as an action brought under the provisions of the charter of the city of Stillwater, which are similar to those of the charter of St. Paul.   The case of Willius v. City of St. Paul, 82 Minn. 273, 84 N. W. 1009, is directly in point, and in line with the cases of State v. Murphy and Fleming v. Roverud, supra. In the Willius case, which was an action involving solely the right of refundment, it was held that the right exists notwithstanding the fact that the judgment declaring the assessment proceedings there before the court invalid was rendered subsequent to the expiration of the three years fixed by the provisions of the charter for bringing such an action.   See also section 576, Dunnell, Minn. Tax Law.

2. The judgment declaring the assessment proceedings in question in this action invalid was rendered in an action to which the city of

St. Paul was not a party; and the point is made that the city is not bound thereby. This question was fully discussed and disposed of adversely to defendant in the case of Willius v. City of St. Paul, supra, and the rule laid down that the judgment in such cases is valid and binding against the city or state, in the absence of a showing that it was procured by mistake, fraud, or collusion. This rule was applied in Easton v. Scofield, 66 Minn. 425, 69 N. W. 326. The position of counsel for appellant on this phase of the case is not without force, but the question must be regarded as settled by the decision in the Willius case. No distinction can be made between a case arising under the charter of St. Paul and one arising under the General Statutes. They are in principle the same.

It is not improbable that a case of fraud and collusion might arise, and the holder of a tax title might, in a given case—as in State v. Norton, 59 Minn. 424, 61 N. W. 458—lose his right of refundment by laches. If the holder of a tax title should permit the person who owned the land at the time the taxes were assessed and at the time of sale to remain in possession thereof for a sufficient length of time to divest the title under the tax proceedings, or if the holder of the tax title should permit his rights to be cut out by a subsequent tax title, and then bring an action for the purpose of determining the validity of his title, procure a judgment adjudging it invalid, without calling the attention of the court to the fact that his rights had become lost by the adverse possession or subsequent tax title, the fraud would be quickly detected, and a refundment denied. Easton v. Scofield, supra. There would be no danger—for such cases are the only ones where fraud or collusion would be possible—of the city being mulcted by the fraud or collusion of the parties seeking a refundment. And again, where no subsequent tax title has intervened, the city loses nothing by the refundment, for the charter above quoted expressly provides that when the assessment proceedings are adjudged invalid the amount of the assessment, with accrued interest, penalties, and costs, may be again assessed against the property, and enforced in a new proceeding.

Our conclusions are in harmony with those reached by the learned trial court, and its order in the premises is affirmed.

Order affirmed.