## AUGUSTUS HOLTERHOFF *vs.* WILLIAM L. MEAD and Wife.

### October 11, 1886.

Tenants in Common — Mortgage — Redemption by Cotenant. — One of two tenants in common of mortgaged premises, (which had been sold under the mortgage,) "for the purpose of effecting a redemption" from the foreclosure sale, and after an "understanding" with his cotenant that he would make such redemption, paid the amount necessary to redeem, and took to himself an assignment of the purchaser's certificate of sale. *Held* that, as to the cotenant, the transaction will be treated in equity as a redemption, and not as divesting the cotenant of his estate.

Same — Purchase of Tax Title. — The legal title having been acquired through such assignment, subject to such equity of the cotenant, the holder thereof could not acquire a tax title, and thereby divest the other of his equity.

Laches—Evidence.—The plaintiff considered not chargeable with laches.

Plaintiff brought this action in the district court for Ramsey county to establish his equitable ownership of an undivided half of certain described land in that county, subject to the defendant's lien for one-half the amounts paid by him in redeeming the land from a mortgage sale, in payment of taxes, and in procuring tax titles. Plaintiff also asked for an accounting of the sums so expended by defendant, and that, on payment by plaintiff of one-half thereof, with interest, the defendant be required to convey to him an undivided half interest in the land.

The action was tried by *Simons*, J., who found the following facts:

On October 1, 1872, one Evans was owner in fee of the land described in the complaint, subject to a mortgage of $1,750 to one

Mumford.   On January 9, 1873, Evans sold an undivided one-half to one Bass, and executed and delivered to him a bond for a deed.   On October 1, 1873, Bass conveyed his interest to the plaintiff.

On January 15, 1874, Evans executed and delivered to plaintiff a conveyance of. the whole tract of land, but with the understanding that Evans was still the owner of an undivided half.

On September 12, 1874, defendant bought of Evans the undivided half of the land so retained by him, and on the same day plaintiff executed and delivered to defendant a bond for a deed of such undivided half.

These purchases by plaintiff and by defendant were made expressly subject to the Mumford mortgage.   On June 21, 1880, the premises were sold, under the power contained in that mortgage, to one William Mumford, who received the proper certificate of sale.   On June 21, 1881, the last day for redeeming from the mortgage sale, the defendant, out of his own moneys, and for the purpose of effecting a redemption, paid to William Mumford the amount required to redeem from the sale, and took to himself and in his own name an assignment by William Mumford of the certificate of sale.   Shortly before this time the defendant "gave plaintiff to understand that he would make such redemption for their joint benefit."   At this time the land was and still is worth $18,000.

On March 5, 1882, one Chittenden, at defendant's request and with money furnished by him, purchased and took an assignment of the interest of the state in the land under the tax sale of September, 1881, and on February 6, 1884, Chittenden quitclaimed to defendant.

Judgment was ordered for plaintiff as prayed in the complaint, a new trial was refused, and the defendants appealed.

*C. D. O'Brien* and *E. S. Chittenden,* for appellants.

*Warner, Stevens & Lawrence,* for respondent.

DICKINSON, J.   The appellants assign error in the findings of fact made by the court in two or three particulars, to which we do not deem it necessary to here refer.   The findings are justified by the evidence.

The principal point of contention is as to whether, upon the facts of the case as found by the court, the payment made by the defend-

ant Mead to the person who had purchased at the mortgage foreclos-
ure sale, and the assignment of the purchaser's certificate of sale to
Mead, had the effect, as to the plaintiff, of a redemption, or of a pur-
chase strictly, ripening, upon the expiration of the time for redemp-
tion, into a title adverse and paramount to that of the plaintiff.   The
respondent claims that the decision of the court is sustained by the
mere relation of these parties as tenants in common; that because of
that relation the defendant was disabled, by an act hostile to the in-
terests of his cotenant, to acquire title to himself, thereby divesting
the plaintiff of his estate.

While the principle thus invoked is admitted by the defendant to
be of controlling force in equity, where the several estates have been
derived by descent from a common ancestor or by the same convey-
ance, it is contended that the rule is inapplicable where the coten-
ants have become such by different conveyances and from different
sources.   It is unnecessary for the purpose of this case to decide
whether the rule is thus limited in its application.   However that
may be, we are of the opinion that the payment by the defendant in
this case, and the assignment to him, must be treated, as it was by
the court below, as a redemption, and not as the purchase of an ad-
verse right ripening in his hands into an adverse title.   These par-
ties, as is conceded, are to be deemed to have been tenants in common
at the time when, just before the expiration of the period for redemp-
tion from the mortgage sale, the defendant paid the amount neces-
sary to redeem, and took to himself an assignment of the purchaser's
certificate of sale.   The court finds that this was done "for the pur-
pose of effecting a redemption of said premises from said sale."   This
finding is justified, if not by presumption of law from the fact that
the parties were tenants in common who had not hitherto assumed
an attitude of hostility to each other, then at least by the testimony
of the defendant Mead, who says that he "had no intention to cut
Holterhoff out, or deprive him of any interest he might have in this
property;" and by the testimony of the plaintiff, which the court
has found to be true, that, in a conversation between the parties a
short time prior to the expiration of the period for redemption, the
defendant "gave the plaintiff to understand that he would make such

redemption for their joint benefit." Both parties purchased the property expressly subject to this mortgage, and they were under equal obligations in respect to its payment. The defendant had a right to redeem. Redemption by him for the protection of his own estate would inure to the benefit of his cotenant, for he had no right to redeem merely his undivided interest.

As between these parties, whether the defendant is to be deemed to have redeemed the land, or to have purchased a new estate, is not much affected by the fact that he took an assignment of the certificate of sale, rather than a certificate of redemption. If he did this "for the purpose of effecting a redemption," equity will, in favor of his cotenant, give that effect to the transaction, so as to preserve the estates of both, he being reimbursed in due proportion, rather than treat his act as hostile, and thus divest the cotenant of his estate. Equity will also have regard to the "understanding" of the parties that. redemption was to be so made, not as being an enforceable contract, but as indicative of the character of the transaction and of the relations of the parties, which equity will regard. The defendant being thus related to the plaintiff, and procuring the assignment under such an agreement, equity will look with disfavor upon a change in his attitude to one of hostility, and upon a claim that he had purchased a new title as a stranger. *Moore* v. *Titman*, 44 Ill. 367, 372; *Stewart* v. *Brown*, 2 Serg. & R. 461.

The defendant, then, acquired, upon the expiration of the period for redemption, the legal title, but subject to the equitable right of the plaintiff to have the transaction treated, as to him, as a redemption. Until this equity of the plaintiff should become extinguished by waiver, by laches, or otherwise, the defendant, as to the undivided half of the property, stood to the plaintiff in the attitude of a trustee, and therefore could not suffer the land to be sold for taxes, become himself the purchaser, and thereby divest the plaintiff of his equitable estate; nor, the land having been bid in by the state at tax sale, could the defendant, by procuring an assignment to himself, defeat the equity of the plaintiff.

It is found by the court that the plaintiff did not know that Mead had taken an assignment (and not merely a certificate of redemp-

tion) until two weeks before this action was commenced. Notice is not to be imputed to him from the record of the assignment so as to prejudice his previously existing title. The conveyance to defendant by the person whom he had procured to take the assignment from the state after the tax sale was not made until February, 1884, and this action was commenced in March, 1884. The points made to the effect that the plaintiff should be denied relief because of his delay in asserting his rights, and because he had not tendered payment to the defendant of his share of the expenditures made by the latter, are therefore not sustained. *Buchanan* v. *King,* 22 Grat. 414.

Order affirmed.