J. C. EASTON v. CHARLES J. SCOFIELD, County Auditor.[1]

December 11, 1896.

Nos. 10,176—(125).

**Tax Sale—Annulment—Refunding of Price.**

G. S. 1894, § 1610, provides that when a tax sale is declared void by a judgment of the court, stating for what reason the sale is annulled, the amount paid the state at the tax sale or for the tax title shall be refunded, with interest thereon. *Held,* this section does not apply to cases where, as between the party purchasing the tax title and the owner of the land, such purchase is merely a payment of the taxes.

**Same—Judgment Annulling Sale—Bad Faith.**

The party claiming refundment in this case had a title on which he would have prevailed in the action in which the judgment declaring the tax sales void was entered. He failed to prove this title, but relied wholly on his tax titles. *Held,* from these facts and other facts stated in the opinion, it conclusively appears that he was guilty of bad faith towards the state, or such gross neglect that bad faith must be imputed to him, and that he is not, on such judgment, entitled to refundment.

Appeal by defendant from a judgment of the district court for Houston county, in favor of plaintiff, entered in pursuance of the findings and order of Whytock, J. Reversed.

*C. S. Trask,* County Attorney, and *James O'Brien,* for appellant.
*Kingsley & Shepherd* and *Duxbury & Duxbury,* for respondent.

CANTY, J. The plaintiff sued out a writ of mandamus in the court below to compel the county auditor of Houston county to draw his warrant on the county treasurer for the amount of certain taxes, and interest thereon, which plaintiff claims he is entitled to have refunded to him, under the provisions of G. S. 1894, § 1610. The case was tried by the court below, without a jury. The court found for plaintiff, and from a judgment entered in his favor the county auditor appeals.

The court found that the plaintiff bid off, at tax sale, certain undivided ninths of a certain tract of land in that county, or purchased tax titles on the same, so that he held a tax title on the same for each year of eight years, between 1875 and 1884, and that he

[1] Reported in 69 N. W. 326.

also paid taxes on some of the undivided ninths of this land from 1875 to 1886. The court further found that one Fisher went into peaceable possession of the whole of the tract of land in question some time prior to 1891; that an action of ejectment was commenced against him by plaintiff, and thereafter, on September 24, 1894, judgment was entered in that action, adjudging that all of said tax titles are void and of no effect, and stating, further, the reason why these tax titles are void, which reasons are set out at length in the findings. The court found that plaintiff is entitled to the refundment of amounts paid, and interest thereon, amounting in all to $1,320.60.

So far as here material, said section 1610 reads as follows:

"When any tax sale is declared void by judgment of court, such judgment shall state for what reason such sale is annulled; and in all cases where any sale has been, or hereafter shall be, so set aside, the money paid by the purchaser at the sale, or by the assignee of the state on taking the assignment certificate, and all subsequent taxes, penalties, and costs that may have been paid thereon, shall, with interest at the rate of ten per cent. per annum from the date of such payment, be returned to the purchaser or assignee, or the party holding his right, out of the county treasury, on the order of the county auditor."

Appellant contends that the court erred in awarding judgment for plaintiff for two reasons: first, that plaintiff is, and ever since 1875 has been, owner or tenant in common of an undivided one-ninth of the tract of land in question, and therefore could not acquire a tax title against his co-tenants, but that his attempts to do so amounted merely to a payment of the taxes; and, second, that the ejectment action was collusive and fraudulent; that plaintiff, in the trial of the same, rested wholly on his tax titles, and suppressed the fact that he was owner of said undivided one-ninth, but stipulated on the trial that he had no other title except such as he had by said tax titles.

1. As to the first point, it appears by the evidence, and was found by the court, that in 1865 the owner of the tract of land conveyed an undivided one-ninth of the same to each of eight other persons, retaining one-ninth himself; that one of said grantees was one Wyckoff, who died in 1870, seised of the same, and left, surviving him, his widow; that on September 28, 1875, the widow conveyed her interest in said land to plaintiff. It also appears from the evidence that Wyckoff left no issue surviving him. The statute of descent then

in force in this state provided that, "if he [the deceased] leave no issue, his estate shall descend to his widow during her natural life." G. S. 1866, c. 46, § 1. Then plaintiff, on September 28, 1875, became the owner of the whole of this one-ninth interest during the life of the widow, and he remained the owner of the same during all of said time, as he had not conveyed the same away and she had not died. It is almost universally held that one tenant in common cannot acquire a tax title against his co-tenants, and his acquiring of the same only operates as a payment of the taxes. 2 Desty, Tax'n, 936; Cooley, Tax'n (2d Ed.) 502. See, also, Holterhoff v. Mead, 36 Minn. 42, 29 N. W. 675.

G. S. 1894, § 1599, was not intended to abrogate this well-established rule, but, on the contrary, was intended to recognize and save it. So far as here material, that section reads as follows:

"Any person, except county auditors, county treasurers, and each of their deputies or clerks, may become the purchaser at such sale. If the owner purchase, the sale shall have the effect to pass to him (subject to redemption as herein provided) every right, title, and interest of any and every person, company, or corporation, free from any claim, lien, or incumbrance, except such right, title, interest, lien, or incumbrance as the owner so purchasing may be legally or equitably bound to protect against such sale, or the taxes for which such sale was made."

The decisions hold that his co-tenant is one of the parties whom the purchaser is "equitably bound to protect." It is as much the duty of one tenant in common to pay the taxes as it is of another. Equity holds that one such tenant must protect his co-tenant as much as he protects himself. The duty of all is the duty of each in that respect. This equitable principle applies with more or less force to every outstanding claim against the land, which one tenant in common may acquire and attempt to use against his co-tenants. 1 Washburn, Real Prop. (5th Ed.) 720.

But the position of respondent seems to be that section 1599 authorizes the owner to purchase his own land at tax sale, and that, even if the purchase of a tax title is merely a payment of the taxes as between him and his co-tenant, still it is not such a payment, as between him and the state of Minnesota, that, as to all parties except his co-tenants, his contract must be enforced as it is written. We will say, in answer to this, that section 1610, when providing for

the refundment of taxes where the tax sale is declared void by a judgment, contemplated a judgment in a real action, not a fictitious one,—an action in which something was at stake besides the interest of the state of Minnesota; an action in which the rights of the state of Minnesota incidentally abide the determination between the parties to the action of real and valuable rights at stake between the parties themselves. It did not contemplate that the owner of land may sue himself for the purpose of determining whether the tax title which he purchased on his own land was valid. Neither did it contemplate that a tenant in common may get up a moot case between himself and his co-tenants for the purpose of determining nothing but the liability of the state of Minnesota to refund the taxes to him. For this reason, if for no other, we are of the opinion that section 1610 does not apply to a case where, as between the party purchasing the tax title and the owner of the land, such purchase is merely a payment of the taxes.

Neither is it material that the taxes were always assessed on undivided ninths of this land. While there is authority under the statute for redeeming an undivided interest from a tax sale (see G. S. 1894, § 1604; Wade v. Drexel, 60 Minn. 164, 62 N. W. 261), we find no authority for assessing land or assessing taxes thereon in any such undivided portions, and, on general principles, it should not be done. It is true, as respondent states, that such an assessment came before us in Wray v. Litchfield, 64 Minn. 309, 67 N. W. 72, but no such point was there raised or discussed. Neither does it follow that, because it is irregular to so assess the land or the taxes, the tax judgment will not, when entered, be valid if the court has acquired jurisdiction. Neither does section 1604, aforesaid, change the relations, duties, or obligations of co-tenants to each other, any further than, as a matter of grace to the one tenant in common, the state permits him to redeem his undivided interest separately. This disposes of all the tax titles of plaintiff acquired since he became tenant in common, on September 28, 1875.

2. But he acquired one tax title prior to that time, to wit, on August 30, 1875; and the sum paid the state for the same, and interest thereon, amounted at the time of the trial to $449.53. In order to determine the validity of this claim, it is necessary to consider the second point urged by appellant.

Fisher had no title to any part of this tract of land, and did not enter under any one who had. He entered and took possession under a void tax title, which he had acquired, but which gave him no right to possession. "A tenant in common is, as against every person but his co-tenants, entitled to the possession of the entire tract held in common, and may maintain ejectment therefor against a stranger to the common title." Sherin v. Larson, 28 Minn. 523, 11 N. W. 70. Then, if plaintiff had, in his ejectment suit against Fisher, proved his title as tenant in common, acquired from Mrs. Wyckoff, he would have prevailed, and the question of the validity of his tax title would have become immaterial in that suit. That case was tried on a written stipulation of facts, which set forth the tax title of Fisher and those of plaintiff, and set up facts showing that all of these tax titles were void. No mention was made of plaintiff's said title as tenant in common, and he expressly stipulated that he had no title to or interest in the tract of land, except such as appeared by his said tax titles and payments of taxes. The county auditor alleged that the judgment in that action was procured by fraud and collusion, but the court below found this to be untrue, and held the judgment a sufficient condition precedent to entitle plaintiff to refundment from the state. In our opinion, this was error.

This judgment is not an estoppel against the state in the same sense that it is against parties and privies. The state merely agrees to abide the event of a judgment in an action over which it has no control, and over which the party interested adversely to the state has control. Under these circumstances, perfect good faith is required of him in the prosecution or defense of the suit. Whether or not the state can take advantage of his mere negligence or mistake of judgment, we need not decide. But it is clear that the state is entitled to attack the judgment for fraud or bad faith on his part. It is also clear that in this case plaintiff's claim against the state is founded on his own intentional omission or gross neglect of duty in the ejectment suit.

In our opinion, it conclusively appears that plaintiff, in failing to prove his title in the ejectment suit, was guilty of fraud, or such gross and unexplainable negligence as to impute to him fraud. In arriving at this conclusion, we have a right to consider his whole course of procedure. If he was acting in good faith, why did he not,

when he discovered his mistake, demand a second trial in the eject-ment suit, under the statute, and on such second trial prove his title, before demanding refundment from the state? We do not decide that it is ordinarily necessary for a party to an ejectment suit to resort to a second trial before demanding refundment; but we do decide that his failure to do so in this case, after the gross and un-accountable blunder of failing to prove his title on the first trial, throws much light on the question of his good faith on that trial.

There are also some facts which furnished a motive for plaintiff's seeming indifference or suicidal conduct in the trial of the ejectment suit. In 1874 this tract of land was the eastern terminus on the Mississippi river of the Southern Minnesota Railroad. The road has since changed hands. The terminus is at another point, and this land has decreased in value. In 1874 its assessed valuation was $3,465; in 1894 it was $602. There is evidence tending to prove that in 1874 its actual value was between $1,500 and $2,000, while in 1895 its value was between $300 and $450. Then, it is plain that it might be much more to plaintiff's interest to obtain refundment from the state than to protect the life estate which he held in one-ninth of this land. Under these circumstances, he was interested in failing to perform his duty, and the utmost good faith towards the state was required of him in his prosecution of the ejectment suit. He was in much the same position as a person who is made judge in his own cause.

In Fidelity & C. Co. v. Eickhoff, 63 Minn. 170, 65 N. W. 351, we held that a three-party contract, which bound one party to abide the event of the acts of another party adversely interested, and made those acts conclusive evidence against the former, is void as against public policy, and that such acts could, at most, be merely prima facie evidence against him. Of course, the contract in that case did not have the statutory sanction that the contract has in this case. It was competent for the state to make the contract it has made in this case. But, conceding all that, such acts of such adverse party should be more closely scrutinized, and fraud or bad faith must be much more readily imputed to him in this case than it would be to a party claiming refundment whose interests in the suit in which the judgment is entered declaring the tax title void are not adverse to the state.

From all of these considerations, we are of the opinion that the evidence of bad faith, or of gross negligence imputing bad faith, on the part of plaintiff, is so conclusive that the finding in his favor cannot stand.

The judgment is reversed, and a new trial granted.

MITCHELL, J. 1 concur in the result, on the second ground stated in the foregoing opinion. In my judgment, the purpose of the statute was to provide for the reimbursement of a purchaser at tax sale only where he had lost the benefit of his purchase as the result of bona fide litigation; and that the unexplained and unexcused failure of the plaintiff to set up his title derived from Wyckoff, in the suit against Fisher, coupled with other facts and circumstances appearing in evidence, conclusively proved that the judgment in that suit was the result either of collusion or of a design to secure an adverse result merely as the basis of a claim against the county.

But I am not prepared to assent to the first ground stated in the opinion, to wit, that G. S. 1894, § 1610, does not apply to the facts of this case. The land was assessed in undivided ninths. Whether that mode of assessing real estate owned by several tenants in common is or is not proper, I do not think the county is in position to question its regularity. As I understand the record, plaintiff had always paid the taxes on his ninth, and what he is claiming reimbursement for is the amount paid on the purchase of the undivided ninths owned by his co-tenants. If he himself had been in fault for not paying the amount due on his own moiety, and then bid in at tax sale the whole land, including his own share, I am willing to concede that plaintiff could not enforce his purchase against his co-tenants, except as a basis for contribution for their pro rata share of the taxes. But, when the purchasing co-tenant is himself free from any default in the payment of his own taxes, I fail to see any good reason why he may not bid in at tax sale the interests of his co-tenants for his own use, there being in such case nothing in the relations of the parties imposing any obligation on any tenant in common to pay the taxes upon the moieties of the others. See Freeman, Co-Ten. § 158. But conceding that the purchase by plaintiff would, as to his co-tenants, merely amount to a payment, still I do not think that any such claim is available to the county. Whatever plaintiff's

duty to his co-tenants may have been, he stood in no realtion to the county inconsistent with his right to purchase at the tax sale. As to it, he was a mere stranger, and owed it no duty, either legal or moral, to pay the taxes on the moieties of his co-tenants. See Home Sav. Bank v. City of Boston, 131 Mass. 277.