BENNET v. THE NORTH COLORADO SPRINGS LAND AND IMPROVEMENT COMPANY.

1. TAX SALES—COTENANTS.

Where the tax was levied and assessed upon the undivided interests of tenants in common separately, and there was no obligation resting on one of the cotenants to pay the taxes of his associates, he is not disqualified from taking a tax title to their interests.

2. SAME—LIMITATIONS—COLOR OF TITLE.

A tax deed, though void upon its face, may constitute color of title under the statute of limitations.

3. PRACTICE—WAIVER.

Counsel who, because it was more accessible, encouraged the introduction of secondary instead of primary evidence of a fact, will not be heard to complain that the better evidence was not offered.

*Appeal from the District Court of El Paso County.*

APPELLANT instituted this action in the district court, alleging that he was the owner by letters patent from the United States of an undivided two ninths interest in 1,720 acres of land in El Paso county, Colorado, particularly describing the same. Plaintiff alleges that he is entitled to the possession of the premises, but that the defendant wrongfully withholds the same to his damage in the sum of $10,000. A number of parties were named as defendants in this complaint, but as the controversy is only between the plaintiff and The North Colorado Springs Land and Improvement Company, the other defendants will not be mentioned. The company appeared and filed an answer, admitting that patent issued to the plaintiff for the land in controversy. All other allegations of the complaint are denied.

For a third defense the defendant alleges title by tax deed from John Potter, county treasurer, executed and delivered on July 1, 1881. Defendant alleges that it has been in the quiet, peaceable and undisputed possession of the property from that date, and for more than five successive years has paid all taxes legally assessed thereon.

For a fourth defense the defendant alleges that the two ninths interest in the premises claimed by plaintiff was sold upon the 8th day of July, 1878, for the taxes legally assessed thereon for the year 1877; that in pursuance of such sale a tax deed was issued to John Sharratt on July 21, 1881, and that plaintiff had brought no action within five years from the execution and delivery of said tax deed.

For a fifth defense the defendant alleges that plaintiff ought not to claim ownership of said two ninths interest, because he had notice of assessment and levy of taxes, advertisement for sale, and took no steps to pay the same; knowingly allowed the same to be sold and took no steps to redeem before the issuance of said tax deed, or within five years thereafter; that he has paid no taxes since that date. A replication was filed to the new matters set up in the answer, and upon these allegations the cause was tried to the court without the intervention of a jury.

It is admitted that United States patent was issued to plaintiff Bennet to these lands in the year 1870. In the year 1877 the title to the land stood as follows: Charles F. Miller, 4/9; Henry L. Paul, 1/6; Joseph Sharratt, 1/6; Olive M. Oakes, 1/9; Hiram P. Bennet, 1/9.

The land was assessed for taxes in that year as the property of these parties—the two ninths interest of Oakes and Bennet being the interest directly involved in this action. On the 8th day of July, 1878, the whole tract was sold for the unpaid taxes of 1877. At this sale Joseph Sharratt was the purchaser. Sharratt's purchase was regarded by the officers as a payment of the taxes for the year 1877, upon his own interest, leaving five sixths only of the land subject to redemption. The treasurer executed a certificate of sale in due form, and after the lapse of the statutory period—three years—and on, to wit, the 21st day of July, 1881, executed and delivered to the purchaser a tax deed for this two ninths interest, the balance of the land having been in the meantime redeemed from the tax sale. This tax deed reads as follows:

### "TREASURER'S DEED.

"Know all men by these presents: That whereas, the following described real property, viz.: The undivided two-ninths interest in and to the following described lands: The south half, the west half of north-west quarter, the east half of north-east quarter of section nineteen; the west half of section twenty; the north half, the south-east quarter, the east half of south-west quarter of section thirty; the north-west quarter of the south-west quarter of section thirty, and the north half of section thirty-one, in township thirteen, range sixty-six, situated in the county of El Paso, and state of Colorado, was subject to taxation for the year A. D. 1877; and

"Whereas, The taxes assessed upon said real property for the year aforesaid remained due and unpaid at the date of the sale hereinafter named; and

" Whereas, The treasurer of said county did, on the eighth day of July, A. D. 1878, by virtue of the authority vested in him by law, at (an adjourned sale) the sale begun and publicly held on the eighth day of July, A. D. 1878, expose to public sale, at the office of the clerk and recorder in the county aforesaid, in substantial conformity with the requirements of the statute in such cases made and provided, the real property above described, for the payment of the taxes, interest and costs then due and remaining unpaid on said property ; and

" Whereas, At the time and place aforesaid, Joseph Sharratt, of the county of El Paso and state of Colorado, having offered to pay the sum of one hundred twenty-one dollars and fifty-five cents, being the whole amount of taxes, interest and costs then due and remaining unpaid on said property, for all of the lands above described, which was the least quantity bid for, and payment of said sum having been made by him to the said treasurer, the said property was stricken off to him at that price ; and

" Whereas, The said Joseph Sharratt has paid subsequent taxes on said property to the amount of twenty-seven dollars and nine cents ; and

" Whereas, More than three years have elapsed since the date of said sale, and the said property has not been redeemed therefrom, as provided by law ;

" Now, therefore, I, John Potter, treasurer of the county aforesaid, for and in consideration of the said sum to the treasurer paid as aforesaid, and by virtue of the statute in such cases made and provided, have granted, bargained and sold, and by these presents do grant, bargain and sell, unto the said Joseph Sharratt, heirs and assigns, the real property last hereinbefore described, to have and to hold, unto him, the said Joseph Sharratt, heirs and assigns forever ; subject, however, to all the rights of redemption by minors, insane persons or idiots provided by law.

" In witness whereof, I, John Potter, treasurer as aforesaid,

by virtue of the authority aforesaid, have hereunto set my
hand and seal, this twenty-first day of July, A. D. 1881.

                              "JOHN POTTER,
                                   " Treasurer."

(Acknowledged before E. J. Eaton, county clerk, July 21st,
1881.)

This deed was filed for record and duly recorded in the
clerk and recorder's office of El Paso county upon the day of
its execution.   By this deed Sharratt acquired the two ninths
interest of Oakes and Bennet.   This, with the one sixth
interest owned by him, gave him the ownership of seven
eighteenths, the other owners having redeemed previous to
the execution of the tax deed.   In the year 1882 Sharratt
conveyed three eighteenths of this interest to one Louis
Dugal, and died in 1883, owning four eighteenths.   This
property descended by will to Mrs. Mary Sharratt Lamoroux
and Mrs. Ann S. Hough, and the title was subsequently vested
by various conveyances in the defendant, The North Colo-
rado Springs Land and Improvement Company, appellee
herein.   The evidence further shows that appellant, Bennet,
was, during all the times mentioned, a lawyer of mature
years ; that at one time he owned the whole 1,720 acres of
land, and that for a time he was actively engaged in looking
after the property.   In 1877 he went to Deadwood, Dakota,
to engage in the practice of his profession, but made no
arrangements with his coöwners or any one else for the pay-
ment of taxes which might fall due upon this land during
his absence.   In January, 1879, Bennet returned to Colo-
rado, and opened a law office in Leadville.   He then learned
that the land had been sold for taxes, but made no effort to
redeem the same from tax sale, and in fact took no steps
whatever with reference to the property for ten years there-
after.   During this time the land greatly appreciated in
value.   Sometime in 1883 or 1884 the lands were leased by
the owners and the lessees went into possession and exer-
cised acts of ownership over them.   In December, 1889,

appellant undertook to redeem the land from the tax sale of 1878, and in 1890, began this action in ejectment. The following statute of limitations is relied upon:

"SEC. 2. Whenever a person, having color of title, either by pre-emption or otherwise, as aforesaid, made in good faith to vacant and unoccupied land or mining claims, shall pay all taxes legally assessed thereon, or for improvements situate thereon, for five successive years, he or she shall be deemed and adjudged to be the legal owner of said vacant and unoccupied lands or mining claims, to the extent and according to the purport of his or her proper title or pre-emption. All persons holding under such tax-payer, by purchase, devise or descent, before said five years shall have expired, and who shall continue to pay the taxes for the term aforesaid, shall be entitled to the benefit of this section: *Provided, however*, that if any person having a better title or pre-emption to said vacant and unoccupied lands or mining claims, shall during the said term of five years, pay the taxes assessed on said lands, or mining claims, or improvements thereon, for any one or more years of the said term of five years, then, in that case, such tax-payer, his heirs and assigns, shall not be entitled to the benefit of this section." General Laws, 1877, sec. 1695; Mills' Annotated Statutes, sec. 2924.

The judgment of the court below was in favor of the defendant. Plaintiff appeals.

Mr. W. C. KINGSLEY and Messrs. BENNET & BENNET, for appellant.

Messrs. LUNT, ARMIT & BROOKS and Messrs. WOLCOTT & VAILE, for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

The plaintiff has certainly been very negligent in asserting his claim to this land. From 1877 to 1889, a period of twelve years, he neither paid taxes upon the property nor

did he make any arrangement to have the same paid, or make any claim whatever to the property, although during this entire period the purchaser at the tax sale and his successors in title were exercising acts of ownership over the premises.

The witness, Frank White, testifies that in the year 1889 he heard the plaintiff say that he was advised of the sale of the property for taxes before the time of redemption had expired, but that he did not have the money necessary to redeem, and he would, therefore, have to lose his title to it. These statements are denied by plaintiff, but under the findings of the district court we must assume the statements to be established. It is shown that it was only after the land had greatly appreciated in value, and after it had passed into the hands of *bona fide* purchasers, who had expended large sums of money in its improvement, that plaintiff sought to assert his claim. Therefore, at the beginning of this investigation, we are confronted with the lack of equity of plaintiff's demand.

It is claimed that as the purchaser at the tax sale (Sharratt) was at the time a tenant in common with plaintiff in this land, that the purchase inured to plaintiff's benefit. In support of this claim the opinion of Chancellor Kent, in the case of *Van Horne et al. v. Fonda*, 5 Johnson's Chancery, 388, is strongly relied upon. That case was between two devisees from a common ancestor, who were in possession of land under an imperfect title, and it was held that one of these devisees could not buy up an outstanding title for his own exclusive benefit, but that such a purchase inured to the benefit of both upon an equal payment of the expenses. In the course of the opinion the learned chancellor took occasion to state: "I will not say, however, that one tenant in common may not, in any case, purchase in an outstanding title for his exclusive benefit."

This case was reviewed in the case of *Brittin et al. v. Handy*, 20 Ark. 381, and the latter has for many years been considered the leading case upon the subject. It is suggested in

the latter case that the mutual obligation spoken of by Chancellor Kent occurs only between such tenants in common as claim under the same instrument or by act of the parties, or by operation of law; but where this does not appear, in the absence of contract tenants in common are under no greater legal obligation to protect one another's interests than would be required of strangers. In that case Brittin purchased under execution the separate estate of his cotenant in the land. It appears that Brittin and Handy were not tenants in common under the same instrument, although both of their titles were derived from the same source, and it was held that such purchase by Brittin was valid. This view of the law was followed by the supreme court of Texas, in *Roberts v. Thorn*, 25 Tex. 728, and in many subsequent cases, so that now it may be said to be established by the strong weight of authority. Freeman on Cotenancy and Partition, sec. 155; Blackwell on Tax Titles, sec. 566, 578, *et seq.*

The general rule is that one cannot buy who is in a position of trust or confidence to the property, or upon whom a duty is cast not consistent with the character of a purchaser, and a tenant in common can only be held bound to protect the interest of his cotenant when some duty is cast upon him with reference to such interest; for instance, if it is shown to be his duty to pay all the taxes, he cannot allow the land to be sold for such taxes, and then avail himself of the tax title. *Dubois v. Campau*, 24 Mich. 360; *Williamson v. Russell*, 18 W. Va. 612. In the case before us the tax was levied upon undivided interests, and there was no obligation resting upon one tenant to pay the tax of his associates. The interest of each was separately assessed, and Sharratt was not disqualified from taking the tax title. *Brittin v. Handy, supra;* Freeman on Cotenancy and Partition, sec. 155; Blackwell on Tax Titles, sec. 578, *et seq.*

We will now consider the effect of the statute of limitations and the payment of five successive years' taxes upon the interests in controversy. It is claimed that the tax deed under which the defendants claim is void and does not start

the statute running. The defects pointed out in the tax deed have reference to the time and place of sale. Some claim is also made that the tax deed purports to convey the entire property instead of a two ninths interest therein, but we do not find this latter claim sustained by the instrument itself. The claim advanced with reference to the date of the sale is based upon the statute then in force, requiring such sales to be begun on the first Monday of July, whereas, by the recital in this deed, it is claimed that it appears the sale was not begun until the 8th day of July, this being the second Monday of the month. The deed also recites that the sale took place at the office of the clerk and recorder, while the statute requires the sale to be made at the county treasurer's office.

Under the decision in *Crisman v. Johnson, ante,* p. 264, such a tax is certainly void, but it does not follow that it is not sufficient to start the statute running. The phrase "color of title" in the statute was before this court for consideration in the case of *De Foresta v. Gast,* 20 Colo. 307, and that case may be cited as authority for the proposition that a "void deed, taken in good faith, may give sufficient color of title." Under the statute it was said, in that case: "The statute (when its conditions are complied with) is intended as a protection to a person holding in good faith under a mere colorable title—that is, under a title which is really no title."

Applying the rule announced in that case to the case at bar, and it is apparent that the tax deed gives color of title. It is executed by the proper officer; gives a correct description of the property conveyed; alleges that the same was subject to taxation for the year 1877; that the taxes were assessed and remained due and unpaid at the date of the sale; that the sale was held by virtue of the authority vested by law in the treasurer. It states that Joseph Sharratt bid $121.55 for the property, this being the whole amount of taxes, interest and costs then due and remaining unpaid; that said sum was paid to the treasurer and the property

was stricken off to Sharratt at that price. It recites, also, that three years had elapsed between the sale and the execution of the deed, and the payment of all taxes by Sharratt accruing during this period. That such a deed furnishes sufficient color of title is well established by the great weight of authority.

To show the payment of taxes for upward of five consecutive years, the defendants offered certified statements taken from the books of The El Paso County Abstract Company. These certificates show the assessment of this property and the payment of taxes thereon by Sharratt and his successors for the years 1878, 1879, 1880, 1881, 1882, 1883 and 1884. It is now claimed that this certificate of the Abstract Company was not competent evidence to prove the payment of such taxes, but we think plaintiff has waived the right to urge this objection. In reference to these certified statements, the record affirmatively shows the following: "To the introduction of which plaintiff's counsel does not object because the tax books themselves are not introduced, but for other reasons." If objection had been made at that time to the character of this evidence, it would undoubtedly have been excluded; but counsel having encouraged its introduction in lieu of better evidence, because it was more accessible, they cannot now be heard to complain because better evidence was not offered. The certificate of the Abstract Company, showing, as it does, the payment of the taxes upon this property for more than five consecutive years, the statute of limitations which we are considering became a bar to plaintiff's action. The judgment of the district court must, therefore, be affirmed.

*Affirmed.*