BOYNTON v. VELDMAN.

TENANCY IN COMMON—PURCHASE OF OUTSTANDING TITLE—VENDOR AND PURCHASER—MARKETABLE TITLE.

Complainant and B. acquired title to undivided interests in a tract of land by different instruments and at different times. No relation of trust or confidence existed between them, and the deed to complainant purported to convey an entire interest. At the time of complainant's purchase there were tax titles outstanding against the premises, which he requested B. to aid in procuring. B. not only refused to do so, but did not object when advised that complainant intended to buy the tax titles, take possession of the land, and sell it. Complainant purchased the tax titles, and subsequently sold the land on contract; the vendee entering into possession, and continuing to occupy for more than five years without interference from B., who never claimed any right to share in the benefit of complainant's purchase. In a suit to foreclose the land contract, *held*, that complainant's purchase of the tax titles did not inure to the benefit of B., and hence the defense that complainant could not give a marketable title was without merit.[1]

Appeal from Muskegon; Russell, J. Submitted October 8, 1902. (Docket No. 15.) Decided October 28, 1902.

---

[1] But see *Ream* v. *Robinson*, 128 Mich. 92 (87 N. W. 115).

Bill by Milo A. Boynton against Everett Veldman, Gertie Veldman, and John Bramer to foreclose a land contract. From a decree for complainant, defendants appeal. Affirmed.

*C. W. Sessions*, for complainant.

*Cross & Lovelace*, for defendants.

MOORE, J. This is a bill filed for the purpose of foreclosing a land contract. From a decree in favor of the complainant, the defendants have appealed to this court.

The bill avers the ownership of the land by the complainant; the making of a contract by complainant in February, 1896, to sell the land to Everett Veldman for the sum of $300; that Veldman, after making the land contract, moved upon the land, and still lives thereon; that, at the time the land contract was made, there were delinquent taxes upon the land for the years 1892 to 1895, inclusive; that it was agreed between complainant and Veldman that complainant should purchase said premises for said delinquent taxes at the next annual sale. It avers that, after the contract was made, said Veldman, prior to October 19, 1896, purchased said land from the auditor general for the delinquent taxes, paying therefor $24.04, and obtained a deed, which he put upon record; that complainant did not learn of this purchase until the time of the annual tax sale in December, 1896, and when he learned of it he had an interview with Veldman, in which it was agreed that the amount paid to the auditor general by Veldman should be indorsed as a payment on the land contract. The bill further avers that in November, 1897, said Veldman and his wife made a mortgage upon said real estate for $100, running to John Bramer, who had full knowledge of the rights of said complainant; that Veldman had not made the payments according to the terms of the contract. There were other allegations in the bill, not necessary to mention. The bill then asked for a foreclosure, and that the amount of the purchase

price paid by said Veldman to the auditor general might be decreed as rightly applied on the land contract.

The defendants put in an answer, in which they deny that complainant was ever the owner of said land, or that he ever made a contract with said Veldman to sell it to him, or that Veldman went into possession under the contract, and nearly every other material allegation in the bill; and they assert that the defendant Everett Veldman is the owner in fee simple of the land by virtue of his tax deeds. In such answer no offer is made to rescind the contract and relinquish possession. No affirmative relief is asked, and no claim is made for improvements, or for the repayment of the small amount of money already paid.

The case was tried in open court. Upon the trial it was made to appear very clearly, we think, that Veldman did purchase the land from complainant on contract, as alleged in the bill, and went into possession under the contract. He paid $5 down, $6 July 15th following, and no other payments except the $24.04 paid to the auditor general for delinquent taxes. The record further discloses that, when this contract was made, complainant was the owner of an undivided three-fourths, and one William H. Bell was the owner of an undivided one-fourth, of the original or government title to the lands. Complainant and Bell acquired their respective titles at different times and by different instruments. No relationship of trust or confidence existed between them. Bell has resided less than four miles from the premises for more than 20 years; has paid no attention thereto; has paid no taxes thereon; has made no objection while the Cutler & Savidge Lumber Company, the then owners of tax titles and undivided interests in the land, cut and removed the valuable timber therefrom; has refused to contribute to the payment of the taxes after being requested so to do by complainant; and has made no effort to disturb or interfere with the possession of either Veldman or the complainant.

On December 4, 1893, complainant purchased the entire premises from the auditor general for the taxes of the

years 1884 to 1891, both inclusive. The taxes for those years had been levied, and the premises had been sold therefor, and the period of redemption therefrom had expired, and the tax titles based thereon had matured, long before complainant acquired any interest in the land. Complainant, through Veldman, has been in the actual, complete, and adverse possession thereof for more than five years, and for more than the statutory period of limitations. At the date of the contract, the taxes on the lands for the years 1892 to 1895, inclusive, were delinquent, and it was agreed between the contracting parties that complainant should bid them off in complainant's name at the next annual tax sale, to be held at the county treasurer's office in the following December. In violation of his agreement, and on the 19th day of October, 1896, defendant Everett Veldman purchased the lands from the auditor general for the taxes of the years 1892 and 1893, and, as a condition of such purchase, paid the taxes for 1894 and 1895. The whole amount paid by him to the auditor general was $24.04.

It is claimed by way of defense that complainant could not give a marketable title; that as he had the record title to but three-fourths of the land, and William H. Bell to one-fourth, they were tenants in common; and that Boynton's purchase of the tax titles inured to the benefit of Bell, as well as to the benefit of Boynton. It may well be questioned whether, under the pleadings, this defense can be made; but, waiving that question, can it be said the relations between Boynton and Bell were of such a character that Boynton could not purchase the outstanding tax titles for his own benefit? We have already seen that Bell and complainant got their titles at different times and by different instruments, and, though Bell lived near the land, he paid no attention to it, and refused to contribute towards the payment of the taxes after they had become delinquent, though requested to do so by complainant. Mr. Bell not only refused to pay any portion of the taxes, but said he did not know anything about the land, and had not seen it for a quarter of a century. In connection with this re-

fusal, he was told that complainant intended to purchase the tax titles, take possession of the land, and sell it. He not only refused to pay any part of the delinquent taxes, but did not object to what the complainant proposed to do, and has never interfered with his possession or with the possession of the defendant.

While it is undoubtedly the general rule that one tenant in common cannot acquire an outstanding title adverse to his co-tenant, and that the purchase of such a title inures to the benefit of all the co-tenants upon equitable contribution being made, there are well-defined and well-established exceptions to the general rule, as where the co-tenants have acquired their respective titles by different instruments and at different times, and no relationship of trust or confidence exists between them, and also where the outstanding title has not been created or suffered to arise through the default of the purchasing co-tenant. *Sands* v. *Davis*, 40 Mich. 14, 19; *Watkins* v. *Green*, 101 Mich. 493, 497 (60 N. W. 44); Freem. Co-Ten. § 155; 2 Rice, Mod. Law Real Prop. § 410; *Elston* v. *Piggott*, 94 Ind. 14, 26; *Myers* v. *Reed*, 9 Sawy. 132, 140 (17 Fed. 401); *Roberts* v. *Thorn*, 25 Tex. 728, 736 (78 Am. Dec. 552); *Miller* v. *Donahue*, 96 Wis. 498, 509 (71 N. W. 900); *Fielding* v. *White*, (Tex. Civ. App.) 32 S. W. 1054.

Complainant and William H. Bell acquired their titles by different instruments and at different times. No relationship of trust or confidence existed between them. The deeds to complainant purported to convey to him an entire interest in the land. The tax titles acquired by complainant were not in any manner founded upon his default, because the taxes were levied, and the land sold, and the time of redemption had expired, before the complainant owned any interest in the land. Mr. Bell has never offered to, or indicated his desire to, pay part of the taxes, or to have the purchase inure to his benefit. We think the complainant is within the exception to the rule.

The decree is affirmed, with costs.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred.