HERBERT H. HOYT v. JOHN LIGHTBODY and Others.[1]

June 1, 1906.

Nos. 14,676—(61).

**Tenants in Common—Adverse Tax Title.**

The rule inhibiting the assertion of an adverse tax title by one cotenant against another is based upon a community of interest in a common title between parties having a common possession and a common interest in the safety of the possession of each, whereby such a relation of trust and confidence is created between the parties that it would be inequitable to permit one of them to do anything to the prejudice of the other in reference to tax titles to the property so situated.

**Same—Redemption of Undivided Interest.**

A statute (section 1604, G. S. 1894) permitting the holder of an undivided interest to redeem his estate by paying into the treasury a proportionate part of the amount of taxes required to redeem the whole does not necessarily or invariably remove the general inhibition against the assertion of an adverse tax title by one cotenant against another.

**Same.**

One who, after his purchase of an undivided interest in land, buys tax certificates thereto, based on taxes assessed in all cases and sales made, in all cases but one, anterior to the transfer to him of the undivided inter-

[1] Reported in 108 N. W. 843.

est, and who perfects these tax certificates by elimination of the right of redemption, is not permitted in law to assert the resulting tax titles adversely to his cotenant.

### Construction of Findings.

Where it appears on the record that the taxes were assessed in the name of the cotenants, or in the name of the tenant who perfected these certificates, general findings of a trial court that the tax titles were based on an undivided half interest belonging to that cotenant will not be construed to contradict the record, so as to result in a finding that the cotenant had acquired tax certificates to the undivided interest in the lands appearing on the record to be assessed in his name, or that they bore the record earmarks of his particular ownership. Wray v. Litchfield, 64 Minn. 309, followed.

### Proof of Kinship.

The evidence of a witness whose knowledge with reference to the subject was derived from an intimate acquaintance with the family is admissible to prove such facts of family history as marriage, kinship, name, and death.

Action in the district court for Cook county to determine the adverse claims of defendants to certain vacant and unoccupied land. The case was tried before Dibell, J., who made findings of fact and as conclusions of law found that defendants were the owners in fee simple of an undivided one half of the premises subject to plaintiff's lien for taxes thereon paid by him. From an order denying a motion to amend the findings of fact and conclusions of law and for a new trial, plaintiff appealed. Affirmed.

*John A. Keyes,* for appellant.

*S. T. & Wm. Harrison* and *Francis H. De Groat,* for respondents.

JAGGARD, J.

In 1896 the plaintiff and appellant began an action to quiet title to vacant and unoccupied land. Judgment by default in his favor was duly entered therein. Afterwards certain of the defendants and respondents in this proceeding applied to the court to open that judgment and permit them to answer. Their application was allowed, and they were permitted to appear and defend. Hoyt v. Lightbody, 93 Minn. 249, 101 N. W. 304. Thereupon all the defendants filed answers, all of which raise substantially the same questions.

Upon trial without a jury the plaintiff asserted title under four tax certificates. The answering defendants claimed to be heirs at law of John Lightbody, deceased, and as such to be entitled to an undivided half of the lands. The plaintiff owned the other undivided interest by virtue of purchase from one McCall. McCall and Lightbody had been tenants in common. The court found, inter alia, the cotenancy between Lightbody and McCall, the transfer by McCall to the plaintiff, the heirship of the defendants as the only children and sole heirs at law of John Lightbody, deceased, the death of his wife before his own decease, the purchase by the plaintiff of the tax certificates based on taxes assessed and sales (except in one case, made anterior to that deed) subsequent to the deed to him by McCall, and the total amount paid by the plaintiff for tax certificates upon the undivided half of the lands owned by defendants, with interest to the date of the finding. It found as conclusions of law that the defendants were the owners in fee of an undivided one half, and that the plaintiff was the owner in fee of the other one half; that the plaintiff had a lien upon the defendants' one half in the amount of principal paid by him for tax certificates and taxes, with interest; and that unless the defendants paid said sum, with interest, the plaintiff might sell the land in accordance with further details of the judgment. From an order denying plaintiff's motion to amend the findings of fact and conclusions of law, and for a new trial, the plaintiff took this appeal.

1. The determining question in this case is whether the plaintiff, being a tenant in common with the defendants, could acquire and hold a tax title on the land adversely to them. In Easton v. Scofield, 66 Minn. 425, 69 N. W. 326, this court said: "It is almost universally held that one tenant in common cannot acquire a tax title against his cotenants, and his acquiring of the same only operates as a payment of the taxes. * * * The decisions hold that his cotenant is one of the parties whom the purchaser [of a tax title] is 'equitably bound to protect' (within the meaning of G. S. 1894, § 1599). It is as much the duty of one tenant in common to pay the taxes as it is of another. Equity holds that one such tenant must protect his cotenant as much as he protects himself. The duty of all is the duty of each in that respect. This equitable principle applies with more or less force to every outstanding claim against the land which one tenant in common may ac-

quire and attempt to use against his cotenants." Justice Mitchell concurred in the result on another ground, but said that he was not prepared to assent to the rule as to cotenancy. Inter alia, he said: "But, when the purchasing cotenant is himself free from any default in the payment of his own taxes, I fail to see any good reason why he may not bid in at tax sale the interests of his cotenants for his own use, there being in such case nothing in the relations of the parties imposing any obligation on any tenant in common to pay the taxes upon the moieties of the others." The decision of the majority of the court in that case is in harmony with other rulings of this court more or less directly involved upon the facts presented by the respective records. Holterhoff v. Mead, 36 Minn. 42, 29 N. W. 675; Norton v. Metropolitan Life Ins. Co., 74 Minn. 491, 77 N. W. 298, 539.

The plaintiff argues with much force that the question is none the less an open one in this state; that the Minnesota decisions, limited to the particular facts in each case, are not inconsistent with the right of this plaintiff to claim title under his tax deeds; and that, in so far as the majority of the court in Easton v. Scofield, supra, announced the general rule, it was for a mistaken reason. In the first place, he insists that, on general principles, there is no privity of interest between cotenants, especially where their titles are derived from different sources, which makes one a trustee of the title of the other. See Vail v. Reynolds, 42 Hun, 647; Coster v. Lorillard, 14 Wend. 265; 2 Black. Com. 191; Blight's Lessee v. Rochester, 7 Wheat. 535, 548, 5 L. Ed. 516; Blackwood v. Van Vleit, 30 Mich. 118; People v. Detroit, 8 Mich. 14, 77 Am. Dec. 433.

A limited privity, however, or a species of fiduciary relation, exists between tenants in common. There is a common possession of every part of the whole between them. They are seised per my et per tout. There is an accountability between them for rents and profits as between each other. 45 Cent. Dig. Tenancy in Common, § 79. Their obligations in many respects, as with reference to incumbrances, easements, outstanding liens, titles, or claims are reciprocal. 45 Cent. Dig. Tenancy in Common, §§ 53–59, inclusive. They are within the principle that a community of interest produces a community of duty. The rule that the purchase of a tax title by one tenant in common inures to the benefit of all, and that the purchaser

is entitled to remuneration only, "arises from the privity subsisting between parties having a common possession of the same land and a common interest in the safety of the possession of each; and it only inculcates that good faith which seems appropriate to their relative position." Marshall, J., in Venable v. Beauchamp, 3 Dana, 321, 28 Am. Dec. 74. "This rule is based upon a community of interest in a common title creating such a relation of trust and confidence between the parties that it would be inequitable to permit one of them to do anything to the prejudice of the other in reference to the property so situated." Justice Miller, in Rothwell v. Dewees, 67 U. S. 613, 17 L. Ed. 309. The overwhelming weight of authority is to this effect, and accords with the majority opinion in Easton v. Scofield, supra. 45 Cent. Dig. Tenancy in Common, §§ 60, 61, 96; Black, Tax Titles (2d Ed.) § 282; 2 Cooley, Taxn. (2d Ed.) 966.

It is difficult to see how the plaintiff has strengthened his case by showing that the taxes were assessed or that the tax sales were made before he acquired his interest, and at a time when he stood in no rela-tion to the defendants concerning the land and had nothing to do with either the lands or the defendants. If his grantor, McCall, was dis-abled to acquire a tax title against his cotenant, that grantor could not put his grantee in any better position than he occupied himself. With respect to the tax liens on the property the grantee stood in just the position that the grantor occupied. Gilfillan, C. J., in MacEwen v. Beard, 58 Minn. 176, 178, 59 N. W. 942. And see Washington Loan & Trust Co. v. McKenzie, 64 Minn. 273, 66 N. W. 976. It is, as coun-sel for defendants argues, axiomatic that a person can convey no more nor better title than he has, no matter what form the instrument of conveyance may have.

In the second place, the plaintiff insists that the present case comes within a well defined and established exception to the general rule; and that when one cotenant has paid one half the taxes assessed on land in which he has an undivided one half interest, and when he had never sustained any legal relation of tenancy or other contract dealings with the other cotenants of his grantor, he might, subsequently to the time when he became a cotenant with other persons, set up against them an adverse title based on tax liens which accumulated before his purchase, although matured into a title after his purchase.

98 M.—13

The authorities on which he relies do not sustain this contention. Thus Lybrand v. Haney, 31 Wis. 230, determined the right of one in possession of land to acquire and assert a tax title, and did not at all involve the present question of cotenancy. In Miller v. Donahue, 96 Wis. 498, 509, 71 N. W. 900, it did not appear that the relationship of cotenant existed when the tax deed was acquired, nor did the alleged cotenant object to its assertion. On the contrary, the Wisconsin court adheres to the general rule of inhibition against the assertion of an adverse tax title by a cotenant against another. Hannig v. Mueller, 82 Wis. 235, collecting cases at page 244, 52 N. W. 98, at page 101. So Roberts v. Thorn, 25 Tex. 728, 78 Am. Dec. 552, sustained the acquisition of a patent, not of a tax title, by one who was a cotenant with another under a worthless title. Nor is this contention of plaintiff justified by his other authorities cited, which recognize that under peculiar circumstances there is no relation of trust and confidence between cotenants which prohibits the acquisition and assertion of an adverse tax title by one cotenant as against another. The review of authorities for the exception to the general rule in general and vague terms to be found in Stevens v. Reynolds, 143 Ind. 467, 41 N. E. 931, 52 Am. St. 422, is expressly held to be obiter, and the general conclusion reached by that case does not aid plaintiff. And see Bender v. Stewart, 75 Ind. 88.

It may well be, on the one hand, that particular circumstances, as an actual agreement between the parties concerning the payment of taxes (Holterhoff v. Mead, 36 Minn. 42, 29 N. W. 675), may serve to emphasize the relation of trust and confidence normally subsisting between cotenants, and that, on the other hand, different circumstances may diminish or remove their reciprocal obligations with respect to the payment of taxes and the assertion of adverse tax titles. Most of the cases cited by plaintiff, which more or less directly tend to support his views, are of the latter category and are easily distinguishable from the one at bar. Thus in Boynton v. Veldman, 131 Mich. 555, collecting cases at page 559, 91 N. W. 1022 and at page 1023, the complainant claimed under a deed purporting to convey title to the entire interest, although in fact it made him a cotenant with another. The complainant requested his cotenant to aid in procuring certain tax titles not in any manner founded on his default, because the taxes had been levied, the

land sold, and the time of redemption had expired before the complainant owned any interest in the land. The cotenant never did so. The complainant bought the tax title. His cotenant never offered to, nor indicated his desire to, pay part of the taxes or to have the purchase inure to his benefit. Complainant's vendee under a contract of sale occupied the premises for five years without interference from the cotenant. In a suit to foreclose the land contract, it was held that the complainant's purchase of the tax title did not inure to his cotenant's benefit, and hence that the defense of complainant's inability to give a marketable title was without merit. It is evident that the normal relation of such trust and confidence involved in the case at bar did not exist in the Michigan case. Nor did the Michigan case involve a controversy in which one cotenant asserted the inhibition against his cotenant of the purchase of a mere tax lien which might have been paid or redeemed before the tax title came into existence.

In the case at bar the tax titles through which the plaintiff claims were liens only at the time plaintiff purchased the fee title and were purchased and perfected by him after he became a cotenant. In each instance the claim of the state would have been satisfied, and no tax title would have accrued, except for the affirmative action taken by the plaintiff to eliminate the right of redemption from the tax certificates. That Michigan case is therefore not inconsistent with the defenses here interposed, nor with the general Michigan rule, which, as a whole, tends to sustain the general inhibition. See Dubois v. Campau, 24 Mich. 360; Richards v. Richards, 75 Mich. 408, 42 N. W. 954. So Brittin v. Handy, 20 Ark. 381, 73 Am. Dec. 497, also cited by plaintiff, recognizes that the purchase of an outstanding adverse title by a cotenant is not void, but may avail, unless the cotenant elects, within a reasonable time, to contribute proportionately to money expended in its purchase. The Arkansas cases, as a whole, adhere to the general rule, and do not sustain the plaintiff's contention in this case. Moore v. Woodall, 40 Ark. 42; Burgett v. Williford, 56 Ark. 187, 19 S. W. 750, 35 Am. St. 96. Other cases within the exception from the general rule of inhibition arise where the land has been assessed upon the tax books to and in the name of owners of undivided interests respectively, and when the owner of each undivided interest could have paid his own tax unaffected by the fact of joint interest, and where the sub-

sequent tax sale and deed were based upon this separate and individual assessment, as Bennet v. North Colorado, 23 Colo. 470, 477, 48 Pac. 812, 58 Am. St. 281.

Counsel for plaintiff accordingly argues that, under section 1604, G. S. 1894, any estate or interest can be protected by making a proper application to be allowed to redeem. That section reads as follows:

> Any person who has, or claims an interest in or lien upon any piece or parcel of land sold, may redeem such estate, or interest by paying into the treasury a proportionate part of the amount required to redeem the whole.

See Blackwood v. Van Vleit, 30 Mich. 118. It is not clear why the right to redeem an undivided interest destroys the general prohibition against the acquisition of a tax title by one cotenant adversely to another. Its purpose is merely to enable one cotenant to protect himself. It suggests no reason for construing that statute so as to justify one owner in destroying the title of the other. Moreover, in this case the plaintiff seems to have failed to bring his case within the adjudged interpretation of that statute. If by any construction, under like circumstances, he is allowed to acquire a tax title against his cotenant, it must be upon the undivided interest which bears the record "earmarks" of ownership by that cotenant. Wray v. Litchfield, 64 Minn. 309, 67 N. W. 72.

Our attention has not been called to the presence, in this record, of any evidence to that effect, nor have we been able to discover it. On the contrary, notices to eliminate the right of redemption, under the law required to be addressed to the person in whose name the premises were assessed at their date, were addressed, one at least to Lightbody and McCall, and others to plaintiff himself, H. H. Hoyt. It is true that the court found that the plaintiff had paid the taxes due "upon his undivided one half of said lands" and that his tax certificates were upon the undivided half "belonging to defendant." This is not equivalent to a finding that the plaintiff paid taxes upon or acquired tax certificates to the undivided half of said lands appearing upon the records to have been assessed in his name, or that they bore the record "earmarks" of his particular ownership. To so construe the finding would be to partially contradict and to exceed the record. The words of ownership

were used in the finding in a general colloquial, rather than in a strict, special, technical, and restricted, sense. The finding is too vague and indefinite to serve plaintiff's purposes. Evidently it was general. There is, moreover, no assertion of claim, no specific finding, and no proof that the interest of each cotenant was separately assessed as appeared in Bennet v. North Colorado, supra. An assessment of taxes may be legally, and in practice constantly is, made to cotenants jointly; nor will it be vacated because one of two tenants in common is named as the owner. Black, Tax Titles (2d Ed.) 131, § 106.

Even if, however, the finding be construed most favorably to the plaintiff, it serves to illustrate the unreasonableness of the rule for which he insists and the impossibility of its present application. See Black, Tax Titles, 352, § 282. According to that rule, if a cotenant has paid taxes on a half not bearing the "earmarks" of his particular ownership, he, having paid them voluntarily and without obligation so to do, has lost his money. If he had paid taxes on a half bearing his own "earmarks" he thereby discharged the obligation of his own land to the state, and has no remedy, and can base no adverse title upon the performance of his own duty. So also according to plaintiff's theory, if a cotenant has acquired a tax title to an undivided interest not bearing the "earmarks" of his own ownership he cannot assert that it affected his cotenant's title more or less than his own; and if he has acquired a tax title on an undivided interest bearing the "earmarks" of his particular ownership, he may have strengthened his own title, but he has not prejudically affected that of his cotenant. In this case, plaintiff on his own theory seems to have perfected a tax title to land assessed in the name of the former cotenants (Lightbody and McCall), which is of no avail to him for present purposes, because it does not bear the earmarks of his particular ownership and to have perfected other tax titles to an interest assessed in his own name, which are of no avail to him here because they serve merely to strengthen his record title.

2. Other assignments of error present the question whether the record shows sufficient proof by the defendants of their heirship to John Lightbody who was the owner of the undivided interest in the land, and that he was dead. The court found this to be a fact. The evidence justified this finding. A witness, whose wife and the wife

of deceased were half sisters and who knew the family well, with whom one of the children lived for two years, and who knew the grandmother, and with whose family the dead husband and wife had. exchanged visits, who talked to both of them about their children, and who was so well acquainted with the family that, if there had been any more heirs, he would have known of. it, was the only witness on this subject. He testified to the relationship of husband and wife between John and Kate Lightbody; that the defendants were the heirs, and the only heirs, of the deceased; that the names of such heirs were as appear in this record; and that both husband and wife were dead, as found by the trial court. The evidence of a witness whose knowledge with reference to the subject was derived from an intimate acquaintance with the family is admissible as to such facts of family history as marriage, kinship, name, and death. See Backdahl v. Grand Lodge A. O. U. W., 46 Minn. 61, 48 N. W. 454; 1 Greenleaf, Ev. § 114, et seq.; Abbott, Trial Ev. (2d Ed.) 121, § 39.

These conclusions render it unnecessary to consider the validity of plaintiff's tax titles and other questions raised in the briefs.

Order affirmed.