Bissell, J.,
delivered the opinion of the court. •
The general rule compels a purchaser at a tax sale who relies on the statutes of limitation to bring himself clearly within their provisions. The original source of title to the land involved was Samuel T. Thompson, who was the pat *167 entee from the government by grant in November, 1875. Two years later he conveyed to James H. Lester, who in 1884 transferred to Mary Agnes Lester, who was the immediate grantor under the name of Field, and who granted to the Brinkers, who were the plaintiffs and appellants. The deed from James H. Lester to Mary Agnes was indefinite in its description, stating that it was of a certain tract of land in El Paso county lying about eight miles east of Colorado Springs, which land had been conveyed to Lester by Thompson by deed, to the record of which deed reference was made for the purposes of description. This deed is attacked by the appellees because of the uncertainty of the description, though we find that on the first trial of this case, it being an action in ejectment, and twice tried under the statute, the defendant admitted that the land described in the deed from J. H. Lester to Mary Agnes, was the same land described in the deed from Thompson to Lester. The title stood in Lester up to the time of the conveyance referred to, but he failed to pay the taxes, and on the 8th of July, 1878, the property was sold by the treasurer for the nonpayment of taxes to Kennedy and Wellesley. Their title subsequently became vested in France, and went from him by sundry mesne conveyances to the defendant in error, the Union Pacific, Denver & Gulf Railway Company. The treasurer’s deed conveying the property to the purchasers bears date of July 8, 1881, and its sufficiency of course is attacked because it was the last day on which redemption might be made, and under the law should have been executed on the day following. It is unimportant to trace the title of the various purchasers, otherwise than to state that antecedent to the vesting of the title in the present holder, they were found to be in the possession of the property and were shown to have worked some part of the land and to have been constructively, if not actually, in the possession of the whole of it. The property was sold by the treasurer in different lots, and consisted of three forties, though the title passed as an eighty and a forty rather than *168 in three separate forties. There was proof tending to show that these parties who claimed title from the treasurer, either inclosed a part of it with a fence, or that it had been inclosed by some of the prior holders of the title, and that the land which was of more or less value as coal land had been worked as such, and under lease or otherwise, the coal vein had been more or less developed and worked. The railroad company had run a track on it from fifty to two hundred feet, and on this spur cars had been run loaded with coal, and the coal disposed of by the claimants of the title. We attach very little significance to these specific acts of the company because as the case stands on the proof the running of a track and its use would not alone show an adverse possession. The possession of a railroad company which is confined to the laying of tracks and their use would not without more, establish an adverse possession beyond the roadbed and track, or possibly, the incidental and necessary right of way unless what it did was done under an assertion of title to the whole tract involved and there were other acts proven which fortified and exhibited a claim to all the land. When the plaintiff brought ejectment to recover the land, the defendant pleaded the two statutes of limitation which are applicable in cases of tins description. The first being the general statute of limitations, and found in General Statutes of 1888, sections 2186 and 2187. This in general terms provides that any person who is in the peaceable and undisputed possession of lands under claim and color of title made in good faith, who shall pay the taxes for five successive years shall be adjudged the legal owner, or whenever a person thus in possession and under these circumstances, shall pay taxes for that period on vacant, unimproved and unoccupied lands, he shall be adjudged the legal owner to the extent, and according to the purport of his paper title. These two sections together cover of course the possession of improved or occupied lands, and of vacant property. The other act which was also pleaded was the act of 1877 amended in the Session Laws of 1885, page 320. This section provides that no action for the recovery of land sold for taxes shall *169 lie, unless it be brought within five years after the execution and delivery of the deed by the treasurer.
On the first trial of the case the learned trial judge who is now the present chief justice of the supreme court, found for the plaintiff as to one forty, and for the defendants as to the other eighty, holding, as is indicated by his opinion which appears in the present record, that the deed which was produced did not show color of title within the purview of the statute. The plaintiff took a new trial as a matter of right on payment of the costs, and on the subsequent trial, which is the one under consideration, the court reversed his ruling as of necessity he must because of later decisions in the supreme court which passed on the direct question involved in the suit. This question was respecting the sufficiency of a deed void on its face to make color of title. The question is again presented to this court, and has been very gravely argued by counsel and we are asked to hold that a deed void on its face cannot make color of title sufficient to protect a person in possession under a treasurer’s deed, even though he may have paid taxes for the period prescribed by the act. It is insisted, and of course we must concede that his position is supported by a good many authorities that a deed void on its face cannot make color because its apparent invalidity necessarily destroys the good faith which is as important to furnish a basis for the application of the statute as the possession of the deed purporting to transfer the title. It is insisted with much force and learning that a void deed which will make color can only be applied to those cases where the deed is void for reasons dehors the instrument. We do not however feel at liberty to assume that the law is otherwise than as it has been declared by the supreme court. We therefore do not intend to either enter on the discussion of this question or express any opinion about it, other than to say it is the law of this jurisdiction as declared by the supreme authority that a deed even though void on its face, will make color of title as fully and as effectually as though the deed was regular on its face and void for reasons aliunde the in *170 strument. The precise question has been before that court and was decided adversely to the present' contention. De Foresta v. Gast, 20 Colo. 307; Bennett v. The North Colorado Springs Land & Improvement Co., 23 Colo. 470.
If the plaintiffs in error desire a review and a reconsiderar tion of this point, they must take the case to the court which has the final right to determine such questions and obtain from it, if they may, a modification of the doctrine. We do not believe it is right or proper for this or any other court to hold otherwise than in accordance with the announcements of the supreme tribunal. This simple suggestion disposes of that contention.
We are quite ready to concede that the defense predicated on the act of 1885 is unavailable. As we look at it an earlier case in the state fully decides that a void deed cannot be used to support a plea of this particular statute. After full consideration that learned court so held. Gomer v. Chaffee, 6 Colo. 314.
But even though that case so holds and the other case disposes of' the proposition as to color of title, it still leaves the question open whether the defendants sustained their plea by proof of the facts on which its applicability depends. In other words, it was incumbent on the defendants in order to support the plea, to prove that they were in possession and that they paid taxes for five successive years which is the prescription of the act. The record is neither full nor precise and the evidence lacks the directness and definiteness which ought to characterize the proof offered in support of this plea. We have examined the original bill of exceptions, as well as the printed abstract, and we assume rather than hold that the case was tried on the theory of concessions respecting the proof which probably accounts for this lack of exactitude.
During the progress of the trial the defendants produced a statement from an abstract office, certified to by its proper officers and verified, showing the payment of the taxes by the various holders of the title. It would almost seem that this was a matter of consent for the learned judge knew as well *171 as we know that this testimony was inadmissible and we cannot bnt believe that he at least did not apprehend that the objection was insisted on. We must however assume that, the bill of exceptions is correct. It was approved by counsel and on this basis the court doubtless signed it. We do not wish to be understood as attacking the bill, but we simply find in this circumstance some little basis for our presumption. In addition to this it was an action in ejectment properly triable by jury, which both parties waived, trying the case to the court and submitting to it the propositions of law raised on the proof. We concede that this testimony was inadmissible and it was doubtless inadmissible in the judgment and to the knowledge of the judge as we gather from his opinion. We presume that this was used in that form to avoid the-trouble of producing the treasurer’s books. The trouble was, as the evidence discloses, that the fire which destroyed a part of the depot in Denver, destroyed the receipts showing the payment of the taxes. Proof of payment was made by the evidence of the officials of the company who paid the taxes for the numerous years, and who testified that according to their best recollections the taxes were paid, although they Were unable to exhibit the receipts. Some receipts were offered and it would appear from the testimony that there was no sale of the land for taxes from the time the original purchasers at the tax sales acquired title. This certainly raises a very strong presumption of payment. This might control unless there is an exception in a case where the defense is a plea of the statute of limitations and proof is required of payment for a specific peiiod in order to support it. We probably would have a right to rely on it in any other situation where parties bought lands, held title, and were in possession. It has been indulged in in other forms of litigation. Bateman v. Reitler, 19 Colo. 547.
We do not directly determine whether this presumption can be used to uphold a case which is defective and lacks definite evidence on a matter so vital to the defense. But we do not find in the record without this abstract evidence on which *172 the court could predicate its finding that the parties were in possession of the land and that they paid the taxes for the period requisite to sustain the plea. Courts sometimes measurably depart from the general rule respecting the conclusions of the court’s findings and refuse to be bound by them.
This they may be compelled to do where there is a total absence of evidence, or where the appellate tribunal is firmly satisfied that it is insufficient to uphold the decree and the judgment is radically wrong. There is no adequate evidence in the record to support the judgment. We cannot therefore accept the findings as true. We must reverse the judgment because of the introduction of that incompetent testimony, to wit: The statement from the abstract office, showing the dates, times and character of the payment of taxes for the period which the statement covered. The evidence was inadmissible and although the case was tried to the court, since there was no other evidence on which he could base his findings, it may not stand. Its admission was an error which we can clearly see prejudiced the rights of the parties.
There are some other questions suggested by the defendants in error, but since this matter is conclusive we must reverse the judgment.
This error is well laid, and the judgment will be reversed.

Reversed.