MARTHA H. NORTON and Another v. METROPOLITAN LIFE
INSURANCE COMPANY and Others.

December 7, 1898.

Nos. 11,391—(143).

One Mortgagee Cannot Acquire Tax Title against Another.

As between the first mortgagee and the second mortgagee, it is the
duty of each to pay the taxes; and one cannot acquire a tax title on the
mortgaged premises, as against the other. This rule is not changed by
G. S. 1894, § 1599.

Reimbursement of Junior Mortgagee for Taxes Paid.

But, where the second mortgagee paid the taxes, held, he will be en-
titled to reimbursement, when his rights as second mortgagee are cut
off by the expiration of redemption under the foreclosure of the first
mortgage.

Extension of Time of Payment by Executors.

After the execution of the first mortgage, a portion of the mortgaged
premises was conveyed away, with a warranty against incumbrance,
and the grantee executed a second mortgage on such portion. The holder
of the first mortgage died, having knowledge of such conveyance; and
thereafter his executors extended the time of payment, without having
any actual knowledge of said conveyance or said second mortgage.

Notice to Testator not Notice to Executors.

1. Held, the knowledge of the testator cannot be imputed to his ex-
ecutors, and such portion was not by such extension released from the
lien of the first mortgage.

Possession by Grantee not Notice to Executors.

2. Held, possession of such portion by a subsequent grantee was not
notice to such executors of the existence of the second mortgage.

Record of Subsequent Instruments not Notice.

Rule applied that the record of the subsequent deeds and second mort-
gage is not, in such a case, notice to the first mortgagee.

Extension of Time—Burden of Proof.

Rule applied that the burden is on such subsequent grantee, and those
who stand in his shoes, to show that he did not consent to the extension.

Amendment of Findings on Point not Litigated.

After the court filed its findings of fact and conclusions of law in an

action to foreclose the first mortgage, the second mortgagee moved that said conclusions be amended so as to order that the mortgaged premises be sold in the inverse order of alienation. No such issue was raised by its answer, or litigated on the trial. *Held*, the court did not err in denying the motion.

## Findings—Reference to Contradictory Pleadings.

For a part of its findings of fact, the court referred to the pleadings, which contradicted each other. *Held*, the finding, being repugnant to itself, cannot be sustained.

Action in the district court for St. Louis county, by the executrix and executor of George W. Norton, to foreclose a real estate mortgage upon which a balance of $32,188.65 was claimed to be due, and interest thereon at 8 per cent. from January 15, 1896. The complaint contained a prayer for judgment against defendant West Duluth Land Company, grantee of the mortgagors, for the amount due, and the costs of the foreclosure, and that said defendant and all persons claiming under it be barred and foreclosed of any rights in the mortgaged premises.

The mortgage originally embraced, among other lands, a tract now described as Outlot S of Auditor's Plat of West Duluth Outlots, but this tract was not so described in the mortgage. The defendants answered separately and alleged, among other matters, that, at the time said Outlot S was conveyed by warranty deed by the West Duluth Land Company to the Minnesota Car Company, the mortgagee, George W. Norton, knowing the full extent of the contemplated conveyance and in consideration of $20,000 paid to him, agreed to discharge said outlot S from the lien of the mortgage, and that on September 4, 1888, he executed a deed of release, which was duly recorded. The deed of release, however, in terms did not include all of said outlot conveyed to the car company. A triangular portion of the southeast part of said lot was not embraced. This omitted tract was referred to in the findings of the court as tract Y. It is entirely in the waters of the Bay of St. Louis and consists of riparian rights only. The controversy between plaintiffs and defendants, Central Trust Company of New York and Metropolitan Life Insurance Company, which are subsequent mortgagees of all of Outlot S from the car company, re-

lated to tract Y. The insurance company and the trust company, by a supplemental answer, set up that they had acquired a tax title to all of this Outlot S, and sought to restrict the mortgage foreclosure so that it should not include the tract Y. The other facts are stated in the opinion.

Upon the trial, the court, Cant, J., found in favor of plaintiffs, and ordered judgment in their favor and against the defendant West Duluth Land Company, for the sum of $32,188.65, and interest thereon from January 15, 1896, at 6 per cent., and directed a sale of the mortgaged premises; also that plaintiffs recover of the last named defendant the sum of $729.45, not secured by the mortgage, being 2 per cent. additional interest, found due as the consideration for the extension of time of payment of the note in suit; also that plaintiffs have a lien on tract Y which is superior to the lien of defendants Central Trust Company and Metropolitan Life Insurance Company, and that the several defendants, other than the makers of the mortgage in action, be barred and foreclosed of all rights or equity of redemption in the mortgaged premises. The finding in respect to the tax title is given in the opinion.

From orders denying a new trial, the insurance company, the trust company, the land company and the receiver of Duluth Manufacturing Company, appealed. Modified.

*Billson, Congdon & Dickinson,* for appellant Metropolitan Life Insurance Company and Central Trust Company.

The insurance company acquired an absolute tax title which extinguished the lien of the senior mortgage. The right to acquire a tax title is statutory. G. S. 1894, § 1599. The statute applies in favor of a mortgagee and against the owner. Reimer v. Newel, 47 Minn. 237. But a tax title cannot be acquired by one whose duty it is to pay the taxes and protect the property from sale. Winston v. Johnson, 42 Minn. 398, 404; Allison v. Armstrong, 28 Minn. 276; Smith v. Lewis, 20 Wis. 369.

The junior mortgagee owes no duty to the senior mortgagee to pay the tax and to protect the mortgaged property from the tax lien. Connecticut v. Bulte, 45 Mich. 113, 121. No such duty arises

from the mere relation of the parties. It must arise from the existence of some contract obligation on the part of the junior incumbrancer to pay the tax, or to protect the senior lien, or the possession of the mortgaged property, or because, as in some jurisdictions, the mortgage conveys the legal title of the property. See Smith v. Lewis, 20 Wis. 369, Dixon, C. J. But the insurance company did not stand in either of these positions. It did not own any estate in the property. It had neither possession nor right of possession. It had only a lien which would not become an estate until after foreclosure and expiration of right to redeem. Hill v. Edwards, 11 Minn. 5 (22); Loy v. Howe, 24 Minn. 167; Standish v. Vosberg, 27 Minn. 175. It was not any more the duty of the junior mortgagee to pay the tax on land in possession of the mortgagors, or their grantees, than it was the duty of the senior mortgagee. American Baptist M. U. v. Hastings, 72 Minn. 484; Fair v. Brown, 40 Iowa, 209.

The only basis for the "common fund" doctrine is that both mortgages are liens upon the same land. But this fact does not involve any community of estate or right in the land itself. Between junior and senior mortgagees, having merely distinct liens on the property, there is no relation analogous to that of tenants in common. The very reason for the disqualification incident to a common ownership—a community of estate—is wholly wanting in this case. The common fund doctrine has no application to such a case. Like the "trust fund" doctrine in reference to the capital of corporations (repudiated by this court in Hospes v. Northwestern Mnfg. & C. Co. 48 Minn. 174) the "common fund" doctrine has no application to this case.

It is settled that an owner may become a purchaser at a tax sale and acquire an independent title. Winston v. Johnson, 42 Minn. 398; Branham v. Bezanson, 33 Minn. 49. See Oswold v. Wolf, 129 Ill. 200. Whether tenants in common whose estates are derived from distinct sources stand to each other in such relation that one cannot purchase and hold a superior title, is doubtful. Stevens v. Reynolds, 143 Ind. 467; Frentz v. Klotsch, 28 Wis. 312; Roberts v. Thorn, 25 Tex. 728; King v. Rowan, 10 Heisk. 675;

Freeman, Coten. § 155. The mortgagee is under no obligation to the state to pay the tax on the land, although he may be personally liable to a tax upon the mortgage debt due him. The state has no reason to object to the purchase of a tax title by assignment from the state, by which its claim for taxes is satisfied. The assignee is the owner of land, not the state, whose prior rights are devested by the tax title. See Cooley, Taxn. 350.

There is no case in this court opposed to the present contention. Reimer v. Newel, 47 Minn. 237, 244; Washington L. & T. Co. v. McKenzie, 64 Minn. 273; American Baptist M. U. v. Hastings, 67 Minn. 303.

Where the creditor extends the time of payment to the principal debtor, without the consent of the sureties, the latter are released. Travers v. Dorr, 60 Minn. 173; Clough v. Mississippi & R. R. Boom Co., 64 Minn. 87; Guderian v. Leland, 61 Minn. 67; 1 Brandt, Sur. § 34; Calvo v. Davies, 73 N. Y. 211; 3 Pomeroy, Eq. Jur. § 1206. The relation of suretyship may exist between a person and a fund, as well as between two persons. Travers v. Dorr, supra; Clough v. Mississippi & R. R. Boom Co., supra; 1 Brandt, Sur. ib. Actual knowledge of the suretyship on the part of the creditor is not necessary to cause such extension to discharge the surety. Fuller v. Quesnel, 63 Minn. 302; 2 Pomeroy, Eq. Jur. §§ 606–608; Morrison v. March, 4 Minn. 325 (422); Coy v. Coy, 15 Minn. 90 (119); Groff v. Ramsey, 19 Minn. 24 (44); Wilkins v. Bevier, 43 Minn. 213; Wolf v. Zabel, 44 Minn. 90.

The court should have required the sale to be made in the inverse order of alienation, as respects the property in which the appellants had acquired an interest, so that they might be protected as far as possible. Savings Bank v. Creswell, 100 U. S. 630; Aldrich v. Cooper, 2 White & T. Lead. Cas. Eq. 291, et seq.; Howard v. Burns, 73 Minn. 356.

*McCordic & Crosby*, for appellant West Duluth Land Company.

*A. L. Agatin*, for respondents.

The proper object of an action to foreclose a mortgage is to subject the mortgaged estate to the payment of the mortgage debt.

The only proper parties are the mortgagors and the mortgagees, and those who have acquired rights or interests under them. Banning v. Bradford, 21 Minn. 308. A judgment ordering foreclosure cannot affect the tax title. 2 Jones, Mort. §§ 1445, 1440, 1470, 1589.

A person will be precluded from making and relying upon a purchase of land for taxes, whenever anything exists in the facts of the case which imposes upon him the duty to pay the taxes, or anything which renders it inequitable as between himself and the holder of the existing title that he should make the purchase. Allison v. Armstrong, 28 Minn. 276. The case at bar is to be distinguished from Wilson v. Jamison, 36 Minn. 59. When the mortgagor cannot acquire a tax title, no one claiming under him can do so. Washington L. & T. Co. v. McKenzie, 64 Minn. 273; McEwen v. Beard, 58 Minn. 176; American Baptist M. U. v. Hastings, 67 Minn. 303. It cannot be said that the second mortgagee owes any duty to the first mortgagee to protect his lien as against a tax sale, nor that the first mortgagee owes any such duty to the second mortgagee. As between themselves, the primary duty is upon the mortgagor to pay the taxes, and, if he makes default, either of the mortgagees may pay, and one of them must do so, or the land will be sold and his lien extinguished. Connecticut v. Bulte, 45 Mich. 113; Horton v. Saunders, 13 Mich. 409; Fair v. Brown, 40 Iowa, 209; 1 Jones, Mort. § 680.

Mortgagees are not bound to ascertain what goes on record subsequent to the recording of their own mortgage, and subsequent records do not affect them. Jones, Mort. §§ 562, 1624; 1 Pingrey, Mort. § 925; Wiltsie, Mort. Forec. § 62. A prior mortgagee is affected only by actual notice of a subsequent mortgage, and not by constructive notice from the recording of the second mortgage. 1 Jones, Mort. § 372; Anderson v. Liston, 69 Minn. 82.

It is incumbent on the party standing in the position of surety to prove that he did not consent to the extension of time for the payment of the debt. Washington Slate Co. v. Burdick, 60 Minn. 270; Guderian v. Leland, 61 Minn. 67.

CANTY, J.

This is an action to foreclose the first mortgage on the real estate in question. The second mortgage was made to the Central Trust Company, as trustee, to secure the payment of a large number of bonds, all of which are held by the Metropolitan Insurance Company. The insurance company is in fact the holder of the second mortgage or trust deed, and claims to be the owner of the land under a tax title, which, if valid, is paramount to, and free from the lien of, plaintiffs' mortgage. Plaintiffs' mortgage was executed and recorded in January, 1887; the defendants' mortgage in September, 1888. The taxes of 1892 being unpaid, judgment was entered, the land sold for the same and bid in by the state in 1894. In May, 1896, the insurance company took an assignment from the state, and gave due notice of the time of expiration of redemption. No redemption was made.

The trial court found that the tax title is valid, and paramount to the lien of plaintiffs' mortgage, unless the insurance company "was legally precluded from acquiring such tax title by reason of having stood in the position of mortgagee junior to the said plaintiffs," and held that it is so precluded. The appellant insurance company concedes that in many states this holding would be good law, but contends that by reason of G. S. 1894, § 1599, the second mortgagee may acquire a valid tax title, as against the first mortgagee. That section provides:

"Any person * * * may become the purchaser at such [tax] sale. If the owner purchase, the sale shall have the effect to pass to him (subject to redemption as herein provided) every right, title and interest of any and every person, company or corporation, free from any claim, lien or incumbrance, except such right, title, interest, lien or incumbrance as the owner so purchasing may be legally or equitably bound to protect against such sale, or the taxes for which such sale was made."

The insurance company contends that it was neither legally nor equitably bound to protect plaintiffs' mortgage against said tax sale or said taxes, and therefore has acquired a valid tax title, as against plaintiffs. We have held that, notwithstanding section 1599, one tenant in common cannot acquire a tax title, as against

his cotenant. Easton v. Scofield, 66 Minn. 425, 69 N. W. 326. It is there said at page 427:

"The decisions hold that his cotenant is one of the parties whom the purchaser is 'equitably bound to protect.' It is as much the duty of one tenant in common to pay the taxes as it is of another. Equity holds that one such tenant must protect his cotenant as much as he protects himself. The duty of all is the duty of each in that respect."

So may it be said that, as between the first mortgagee and the second mortgagee, it is as much the duty of the one to pay the taxes as it is of the other. In equity it was the duty of the first mortgagee to pay the taxes for himself and the second mortgagee. It was the duty of the second mortgagee to pay the taxes for himself and the first mortgagee. The duty of both is the duty of each in this respect. The decisions that hold that the one mortgagee cannot acquire a tax title as against the other liken it to the case of tenants in common. See Connecticut v. Bulte, 45 Mich. 113, 7 N. W. 707; McLaughlin v. Green, 48 Miss. 175, 209; Garrettson v. Scofield, 44 Iowa, 35. In our opinion, the insurance company could not acquire the tax title in question, as against the plaintiffs.

2. The insurance company will be entitled to reimbursement for the amount of the taxes paid, if its right as second mortgagee is barred by the expiration of redemption under the foreclosure of the first mortgage; and in the meantime it holds a lien for such amount, superior to the lien of the first mortgage. But the court ordered judgment barring all liens and claims of the trust company and insurance company, other than the right of redemption from the foreclosure sale. This is error.

The validity of a tax title held by the second mortgagee may be litigated in a suit to foreclose the first mortgage. Wilson v. Jamison, 36 Minn. 59, 29 N. W. 887. This is merely holding that in such a suit either party may determine whether the defendant's lien or title is subject to the lien of the plaintiffs' mortgage. But whether the paramount lien of the second mortgagee for the taxes paid by him should be litigated, the amount thereof ascertained, or ordered paid, or the lien foreclosed, in such an action, we need not determine. Neither party has asked for any such relief, or introduced

evidence on which it could be granted. The land in question is but a small part of the tract sold for said taxes, and there is no evidence from which it can be determined what part of these taxes the land in question should bear. The plaintiffs or the purchaser at their foreclosure sale may never acquire title to this land. It may be redeemed by the owner or by the second mortgagee itself, and the latter would not, after any such redemption, have a claim on these plaintiffs for reimbursement. Then we are of the opinion that the claim for such reimbursement need not be enforced in this action, or until the time to redeem from such foreclosure sale expires.

The order for judgment must therefore be modified so as not to bar the right of the insurance company to such reimbursement.

3. Plaintiffs' mortgage was made by one Simonds and others, the then owners of the land; and thereafter, in March, 1887, these mortgagors conveyed the land to the West Duluth Land Company, subject to the mortgage, the payment of which was in the conveyance assumed by the land company, and the deed was then recorded. Thereafter, on August 31, 1888, the land company conveyed a part of the tract to the Minnesota Car Company, with a covenant of warranty against all incumbrances; and on September 1, 1888, the car company made on this part the second mortgage, which was then recorded. Thereafter, at various times from 1892 to 1896, the plaintiffs entered into various agreements with the land company, whereby from time to time they extended for definite periods the time of payment of their mortgage indebtedness.

The first mortgage was made to one George W. Norton, and during his lifetime he knew that the land had been conveyed by the land company to the car company with a warranty against incumbrance. But he died in 1889, and the plaintiffs, his executors, never had any actual knowledge of any such conveyance or of said second mortgage at any of the times they granted said extensions. By mesne conveyances the land was in 1892 conveyed to the Duluth Manufacturing Company, and the latter then took possession of the same, and continued in possession at and during the time of said extensions, but these plaintiffs had no actual knowledge thereof at any of the times they granted said extensions. The second

mortgagees never consented to any of these extensions, but it does not appear whether or not the car company or its grantees, or any of them, did so consent.

On this state of facts, the trust company and the insurance company contend that, as to plaintiffs' mortgage, the land company had become the principal debtor, and the part of the land still held by it had become the principal fund out of which that debt should be made; that the part of the land so covered by the second mortgage was only a surety for the payment of the first mortgage, and was released by the granting of the extensions of the time of payment of that mortgage. We cannot hold that the part of the land covered by the second mortgage has been thus released. The record of the second mortgage and of the conveyances subsequent to that to the land company was not sufficient notice to these plaintiffs of the existence of the facts appearing in such record. Jones, Mort. § 1624.

It is generally held that, in order to release such a surety by such an extension of the time of payment, the mortgagee granting the extension must have actual notice of the facts out of which the equities of such subsequent grantees and mortgagees arise. Id. Constructive notice is not sufficient. We are of the opinion that actual notice to the testator at a time when, so far as appears, he did not contemplate the giving of any such extension, is at most only constructive notice to his executors, and not sufficient notice to them. Whether the possession of the manufacturing company was sufficient notice to the executors of the equities of that company, we need not consider.

We may assume that, if the land was by any of those extensions released from the lien of the first mortgage, that release would inure to the benefit of the second mortgage. But the burden was on the trust company and insurance company, appellants, to prove that the manufacturing company did not consent to the extensions (Washington Slate Co. v. Burdick, 60 Minn. 270, 62 N. W. 285; Guderian v. Leland, 61 Minn. 67, 63 N. W. 175), and they failed to maintain that burden. Again, the possession of the manufacturing company was not notice to the executors of the existence of the second mortgage. Then these appellants failed to show that

by any of said extensions the land in question was released from the lien of the first mortgage.

4. Appellants, the trust company and the insurance company, made a motion so to amend the conclusions of law and order for judgment as to provide that the land covered by the first mortgage should be sold on the foreclosure sale in parcels, in the inverse order of alienation. In our opinion, the court did not err in denying the motion. No such relief was asked for by these appellants in their answer, or, as far as appears, at any stage of the proceedings, until after the court had filed its findings of fact and conclusions of law. Under these circumstances, we cannot presume that this issue was litigated, or that all the facts bearing on this alleged equity were ever presented to the court.

5. The West Duluth Land Company has also appealed from an order denying a new trial, and urges some of the points above disposed of. But it also urges another point. The complaint alleges that a large portion of the principal sum secured by the first mortgage fell due January 15, 1892, and that in consideration of said extensions the land company agreed to pay interest thereafter on all of the mortgage indebtedness at the rate of 8 per cent. per annum until paid, instead of 6 per cent., as provided in the notes and mortgage. The answer of the land company admits that it agreed, in consideration of said extensions, to pay interest on the amount due at the rate of 8 per cent. per annum until July 15, 1896, but not beyond that date. This interest was paid up to January 15, 1896. On the trial the court made the following finding:

"That there is also due the plaintiffs from the defendant West Duluth Land Company, as bonus or consideration for the extensions referred to in the pleadings, an amount equal to two per cent. on the aforesaid principal sum of $32,188.65, from January 15, 1896, to the date of the commencement of this action, to wit, the 3d day of March, 1897, to wit, the sum of $729.45."

Thereupon judgment was ordered against the land company for $729.45. Appellant land company contends that the findings of fact will not support this conclusion of law and order for judgment. We agree with appellant. The pleadings contradict each other on the question of what length of time the land company

agreed to pay this extra 2 per cent. interest. According to the answer, it is owing for only the six months ending July 15, 1896, and the amount thereof is only $321.88. Unless plaintiffs are willing to accept this sum, and release the balance of said $729.45, a new trial must be granted on this issue alone.

This disposes of all the questions raised having any merit.

It is therefore ordered that the order for judgment be modified in accordance with this opinion, and that, unless plaintiffs shall file a written release of all of said $729.45 in excess of said $321.88 within ten days after notice of the filing of the remittitur in the court below, a new trial be granted on the issue mentioned in the fifth or last division of this opinion.

In all other respects the orders appealed from are affirmed.

An application for a reargument having been made, the following opinion was filed December 21, 1898:

CANTY, J.

In the fourth division of the preceding opinion we held that the court below did not err in denying appellants' motion so to amend the conclusions of law as to order the mortgaged premises sold in parcels in the inverse order of alienation.

We did not so hold merely because such relief was not prayed for in the answers of appellants. We did not, as counsel seem to think, overlook G. S. 1894, § 5413, which provides, in effect, that when the defendants have answered, and the parties go to trial on the merits, the court may grant any relief embraced within the issues, regardless of the specific prayers for relief in the pleadings.

Our main reason for holding that the court below did not err was because it does not appear that any such question was litigated, or even suggested, during the trial. Error is not presumed, but must be affirmatively shown. A bill of exceptions was settled which is wholly silent on the question now under consideration. If appellants had asked for this relief on the trial, the plaintiff might have shown a state of facts which would have raised a counter equity. For instance: The land here in controversy is a submerged tract between the shore and the dock line in St. Louis Bay. Most of the boundaries of the tract are undefined. It is but a small

part of the mortgaged premises, and, in disposing of such part, the grantees of the mortgagors cut off most of the rest of the tract from access to the bay. It may be that offering separately at the foreclosure sale the parcels so sold would result in their being bid off at an inadequate price. It might be like selling the front entrance to a man's house separately from the rest of the premises. See Lalor v. McCarthy, 24 Minn. 417. There may be other countervailing equities.

The petition for reargument is denied.